UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA,     :

                        :

      -v.-            :

                        :

PETER B. MADOFF,         :

                        :

       Defendant.     :
-----------------------------------------------------x

FINAL ORDER OF FORFEITURE
(Old Westbury Real Property)

S7 10 Cr. 228 (LTS)

WHEREAS, on or about June 29, 2012, PETER B. MADOFF, (the "defendant"), was charged in a two-count superseding information (the "Information), with conspiracy to (a) commit securities fraud (b) falsify records of an investment adviser, (c) falsify records of a broker-dealer, (d) make false filings with the Securities and Exchange Commission ("SEC"), (e) commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g) obstruct and impede the lawful governmental function of the Internal Revenue Service in violation of Title 18 United States Code Section 371 (Count One); and falsifying records of an investment advisor in violation of Title 15 United States Code, Sections 80b-4 and 80b-17, Title 17 Code of Federal Regulations, Section 275.204-2, and Title 18 United States Code Section 2 (Count Two);

WHEREAS, the Information included a forfeiture allegation as to Count One of the Information seeking, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, the forfeiture of all property constituting or derived from proceeds traceable to the commission of the conspiracy offense alleged in Count One of the Information, including by not limited to approximately $143.1 billion, a sum of money representing the amount of proceeds obtained as a result of the said offense, and all property traceable thereto;

WHEREAS, on June 29, 2012, the defendant pled guilty to Count One and Count Two of the Information and admitted the forfeiture allegation as to Count One of the Information,

pursuant to a plea agreement with the Government, wherein the defendant (1) agreed to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, a sum of money equal to $143.1 billion, representing the amount of proceeds traceable to the commission of the conduct alleged in Count One of the Indictment; and (2) agreed to forfeit all of his right, title and interest in particularly identified specific property including, among other assets, the real property and appurtenances known as 34 Pheasant Run, Old Westbury, New York, together with its appurtenances, improvements, and fixtures (indoor and outdoor) (the "Specific Property");

WHEREAS, on or about June 29, 2012, the Court entered a Preliminary Order of Forfeiture (Final as to the Defendant) (the "Preliminary Order of Forfeiture") (attached hereto as Exhibit A) as to the defendant, that (i) imposed a money judgment upon the defendant in the amount of $143,100,000,000, representing the amount of proceeds traceable to the commission of the offenses charged in Count One of the Information and (ii) ordered the defendant to forfeit all his right, title and interest in the property listed in Exhibit A attached to the Preliminary Order of Forfeiture, including among other assets, the Specific Property, as property constituting or derived from proceeds traceable to the offenses charged in Count One of the Information;

WHEREAS, the Court ordered that proceeds from the sale of the Specific Property are to be applied, in partial satisfaction, to the Money Judgment in partial satisfaction;

WHEREAS, the defendant was sentenced on December 20, 2012 and criminal forfeiture was imposed in accordance with the terms of the Preliminary Order of Forfeiture;

WHEREAS, the Preliminary Order of Forfeiture directed the United States to publish, for at least thirty consecutive days, notice of the Preliminary Order of Forfeiture, of the United States' intent to dispose of the Specific Property, and the requirement that any person asserting a legal interest in the Specific Property file a petition with the Court in accordance with

the requirements of Title 21 United States Code, Sections 853(n)(2) and (3). The Preliminary Order of Forfeiture further stated that the United States could, to the extent practicable, provide direct written notice to any person know to have an alleged interest in the Specific Property;

WHEREAS, notice of Preliminary Order of Forfeiture as to the assets listed in Exhibit A, including the Specific Property, was published on www.forfeiture.gov for the least thirty consecutive days, beginning on May 18, 2013, and ending on June 16, 2013, as permitted by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   Proof of such publication was filed with the Clerk of the Court on March 13, 2014, a copy of which is attached hereto as Exhibit B;

WHEREAS, the published notice explained that any person asserting a legal interest in the Specific Property was required to file a petition with the Court within sixty days from the first day of publication of the notice on the government internet site, and that if no such petitions were filed, following the expiration of the period for the filing of such petitions, the United States would have clear title to the Specific Property, in accordance with Supplemental Rule G(5)(a)(ii)(B);

WHEREAS, the defendant and Marion Madoff are the only persons and entities known to the Government to have or to have asserted a potential interest in the Specific Property;

WHEREAS, on or about June 29, 2012, the Court entered a Stipulation and Order between the Government and Marion Madoff (attached hereto as Exhibit C), wherein the parties agreed that $671,733.23 in United States currency would be held in an escrow account which would then be transferred to Marion Madoff within three days of the sale of the Specific Property or the transfer of the Specific Property into United States Marshals Service custody, thereby extinguishing her potential interest in the Specific Property;

WHEREAS, $671,733.23 in United States currency was transferred from the escrow account to Marion Madoff upon the transfer of the Specific Property into the United States Marshals Service custody, thereby extinguishing all of Marion Madoff's right, title and interest in the Specific Property;

WHEREAS, no other claims or answers have been filed or made in this action, no other parties have appeared to contest the action to date, and the requisite time periods have expired; and

WHEREAS, pursuant to 21 U.S.C. § 853(n)(7), the United States shall have clear title to any forfeited property where no direct notice to potential claimants was required and no petitions for a hearing to contest the forfeiture have been filed within thirty days of the final publication of the notices of forfeiture as set forth in Title 21, United States Code, Section 853(n)(2);

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      All right, title and interest in the Specific Property is hereby forfeited and vested in the United States of America for disposition according to law.

2.      Pursuant to Title 21 U.S.C. § 853(n)(7) the United States of America shall, and is hereby deemed to, have clear title to the Specific Property.

3.      The United States Marshals Service shall take possession of the Specific Property and dispose of the same according to law, in accordance with Title 21, United States Code, Section 853(h).


[Remainder of Page Left Intentionally Blank]


4

4.      The Clerk of the Court shall forward three certified copies of this Final Order of

Forfeiture to the Money Laundering & Asset Forfeiture Unit, One St. Andrew's Plaza, New

York, New York, 10007.

SO ORDERED:


_____                    _____
HONORABLE LAURA TAYLOR SWAIN                        DATE
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

                                 :

       - v. -                                :

                                 :

PETER B. MADOFF,                             :

            Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRELIMINARY ORDER
OF FORFEITURE
(FINAL AS TO THE DEFENDANT)

S7 10 Cr. 228 (LTS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 9 2012

## Background

I.      Information S7 10 Cr. 228 (LTS) (the "Information"), filed June 29, 2012, charged PETER B. MADOFF, the defendant ("MADOFF" or the "defendant"), with (1) conspiring to (a) commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a broker-dealer, (d) make false filings with the Securities and Exchange Commission ("SEC"), (e) commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g) obstruct and impede the lawful governmental function of the Internal Revenue Service; and (2) falsifying records of an investment adviser, in connection with the multi-billion dollar fraud operated through Bernard L. Madoff Investment Securities ("BLMIS"), through on or about December 11, 2008.

II.     The Information also contains a forfeiture allegation concerning the conspiracy charged Count One of the Information, certain of the objects of which constitute "specified unlawful activity" as that term is defined in 18 U.S.C. § 1956(c)(7) (the "SUA Conspiracy Offenses"), and which seeks criminal forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy

Offenses, including a money judgment in the amount of $143.1 billion, representing the amount of proceeds traceable to the commission of the SUA Conspiracy Offenses, all property constituting or derived from proceeds traceable to the commission of the said offenses, all property traceable to such property, and substitute assets, pursuant to 21 U.S.C. § 853(p).

III.     On June 29, 2012, MADOFF pleaded guilty to both counts in the Information, admitted the forfeiture allegation, and agreed to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, a sum of money equal to $143.1 billion, representing the amount of proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property (including certain more particularly identified specific property).

IV.     The defendant having pleaded guilty to counts as to which the Government is seeking the penalty of criminal forfeiture, and the Court having accepted the defendant's plea and admission to forfeiture, entry of a preliminary order of forfeiture is appropriate pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure.

## Property Subject To Forfeiture

### Money Judgment

V.     The Government represents, and the defendant concedes, that if the Government were to apply for an order imposing a personal money judgment upon the defendant, the Government could prove by a preponderance of the evidence that the defendant is liable for a personal money judgment in the amount of $143.1 billion, a sum of money representing the amount of property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property, as alleged in the Information's forfeiture allegation.

VI.     Accordingly, the Government and the defendant agree that a total money judgment in the amount of $143,100,00,000 should be imposed upon the defendant.

<u>Specific Property</u>

VII.    The Government represents, and the defendant concedes, that if the Government were to apply for an order of criminal forfeiture as to specific property, the Government could prove the following by a preponderance of the evidence:

(1)     Any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, whether held in his own name, in the name of his wife or other individual, either jointly or solely by such other person; any future, contingent or unperfected interest; and any claim to property based on an alleged contractual, marital, or other legal or equitable right; and all property traceable to such property (the "Forfeited Property"), has the requisite nexus to the SUA Conspiracy Offenses.

(2)     Based upon the foregoing, the Forfeited Property is forfeitable to the United States of America as property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property.

(3)     The Forfeited Property includes, but is not limited to, all right, title and interest of the defendant in the property listed in Exhibit A to this Order (the "Specific Property").

(4)     Because all the Forfeited Property cannot be identified at this time, and may not be identified prior to sentencing, the preliminary order of forfeiture may be amended when additional specific property is identified, pursuant to Rule 32.2(b)(2)(C) of the Federal Rules of Criminal Procedure.

(5)     Based upon the foregoing, the defendant agrees that he will not file a claim, statement of interest or petition (including but not limited to a petition for remission or mitigation) or otherwise contest any forfeiture proceeding involving the Specific Property on any ground, and will not cause or assist anyone else in doing so.

(6)     The Defendant further consents to the administrative and/or civil forfeiture of the Specific Property pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>Substitute Assets Provision</u>

VIII.    The Government represents, and the defendant concedes, that as a result of acts and omissions of the defendant, property subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; and has been commingled with other property which cannot be divided without difficulty.  Pursuant to 21 U.S.C. § 853(p), incorporated by 28 U.S.C. § 2461(c), the Court may therefore order the forfeiture of any other property of the defendant to the extent necessary to satisfy the money judgment to be imposed upon the defendant.

<u>Miscellaneous Provisions</u>

IX.    The defendant consents to the entry of orders of interlocutory sale of the Forfeited Property pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

X.    In the event the United States obtains a final order of forfeiture as to the Forfeited Property, the Department of Justice will authorize the distribution of the net sale proceeds to the victims of the fraud charged in the instant case and in *United States v. Bernard L. Madoff*, 09 Cr. 213 (DC), *United States v. David G. Friehling*, 09 Cr. 700 (AKH), and *United States v. Frank DiPascali*, 09 Cr. 764 (RJS), consistent with applicable Department of Justice regulations, pursuant to 21 U.S.C. § 853(i)(1) and 28 C.F.R. Part 9.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, and Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, and based on the foregoing, the Court finds by a preponderance of the evidence that the defendant is liable for a personal money judgment in the amount of $143.1 billion, a sum of money representing the amount of property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property.  Accordingly, the defendant is liable for a total money judgment in the amount of $143,100,000,000 (the "Money Judgment").

2.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, and Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, and based on the foregoing, any and all property and other interests belonging to, owed to, or controlled in whole or in part by the defendant, whether held in his own name, in the name of his wife or other individual, either jointly or solely by such other person; any future, contingent or unperfected interest; and any claim to property based on an alleged contractual, marital, or other legal or equitable right; and all property traceable to such property (the "Forfeited Property"), has the requisite nexus to the offenses giving rise to the forfeiture charged in the Information, and is therefore forfeitable and is hereby forfeited to the United States of America as property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses.

3.      The Forfeited Property includes, but is not limited to, all right, title and interest of the defendant in the Specific Property, and the same is hereby forfeited to the United States for disposition in accordance with law, subject to the provisions of 21 U.S.C. § 853(n)(1) and 18 U.S.C. § 982(b)(1).

5

4.     The defendant having consented to the entry of orders of interlocutory sale of the

Specific Property, upon application of the Government and pursuant to Rule 32.2(b)(7) of the

Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions, the Court will enter orders of interlocutory sale in

order to preserve and maximize the value of the Specific Property pending entry of a final order of

forfeiture.

5.     The net proceeds from the sale of the Forfeited Property shall be applied to the Money

Judgment, in partial satisfaction thereof.

6.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United

States Marshals Service ("USMS") is hereby authorized to:

(a)     take possession of the Specific Property and to hold such property in its
        secure custody and control, provided, however, that the USMS shall not take
        immediate possession of the real property located at (i) 34 Pheasant Run, Old
        Westbury, New York, and (ii) 975 Park Avenue, Apartment 6B, New York,
        New York, both of which shall be marketed for sale by the defendant's wife
        (and maintained at her expense) pursuant to the terms of a separate
        Stipulation and Order between her and the United States Attorney's Office
        for the Southern District of New York (the "Office");

(b)     maintain existing insurance policies and, to the best of its ability, renew any
        other insurance policies, that the USMS, in its sole discretion, determines to
        be necessary to preserve the value of the Specific Property pending sale; and

(c)     solicit from among a limited number of vendors to assist in the preservation
        or maintenance of Specific Property pending sale and the disposal of such
        personal property.

7.     The United States may, in its sole discretion, reject any offer to purchase the Specific

Property where it determines that the offer is being made by, or on behalf of, a person involved in

6

the criminal activity alleged as the basis for forfeiture, or who contributed to or benefitted from the offense underlying the forfeiture.

8.     Pursuant to 21 U.S.C. § 853(g) and Rule 32.2(b)(3), the defendant, his attorneys, agents, spouse, and other family members, and anyone acting on his behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of this Order, including financial institutions and other custodians:

    (a)    shall not directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the Specific Property;

    (b)    shall not use or permit the Specific Property to be used for any illegal activity; and

    (c)    shall not take any action that would depreciate, damage, or in any way diminish the value of the Specific Property without the prior written consent of the Office.

9.     Pursuant to Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, the United States shall publish notice of this Order for at least thirty (30) consecutive days on the government internet site www.forfeiture.gov. The United States shall also send notice of this Order to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

10.     Any person, other than the defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of notice on the government internet site, or no later than thirty-five (35) days from the mailing of direct notice, whichever is

earlier, pursuant to Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and Rule G(5) of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

11.     The notice of forfeiture must describe the forfeited property, state the times by which

a petition contesting the forfeiture must be filed, and state the name and contact information for the

government attorney to be served with the petition. The notice shall also state that the petition (i)

shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific

Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the

nature and extent of the petitioner's right, title or interest in the Specific Property, the time and

circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property,

any additional facts supporting the petitioner's claim, and the relief sought, pursuant to 21 U.S.C.

§ 853(n).

12.     Upon adjudication of all third-party interests, this Court will enter a final order of

forfeiture pursuant to 21 U.S.C. § 853(n) incorporated by 28 U.S.C. § 2461(c), in which all interests

will be addressed.

13.     Pursuant to  Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, this Order

of Forfeiture shall be final against the defendant PETER B. MADOFF, shall be made part of the

sentence of the defendant PETER B. MADOFF, and shall be included in the judgment of conviction

therewith.

14.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry

of this Preliminary Order of Forfeiture, the Office is authorized to conduct any discovery needed to

identify, locate, or dispose of property subject to forfeiture, including depositions, interrogatories,

requests for production of documents and subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

15.    As the statutory criteria for the forfeiture of substitute property have been satisfied, pursuant to 21 U.S.C. § 853(p), in the event the Government locates any other property of the defendant up to the value of the Forfeited Property, and that may be necessary to satisfy the Money Judgments, all right, title and interest of the defendant in such property is forfeitable as substitute property pursuant to 21 U.S.C. § 853(p).    Accordingly, pursuant to Rule 32.2(e), on the Government's motion, the Court may at any time enter an order of forfeiture of such substitute property.

16.    As the defendant has stipulated and the Court has found that the property subject to forfeiture includes any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, and is not limited to the Specific Property, pursuant to Rule 32.2(b)(2)(C), this Order will be amended pursuant to Rule 32.2(e)(1) on the Government's application for an amended order as to additional specific property not identified in Exhibit A hereto.

17.    In executing upon this order of forfeiture, the Government may use all remedies available to it pursuant to 21 U.S.C. § 853 and any other applicable federal law.  If no such federal law exists, the Government may use all remedies available to it pursuant to applicable state law.

18.    All payments on the Money Judgment will be made by Postal money order, bank or certified check, payable, in this instance, to the "United States Marshals Service," and will bear the case name and number and be delivered to the United States Attorney's Office, Southern District of New York, Attn: Asset Forfeiture Unit, One St. Andrews Plaza, New York, New York 10007, or may be wired to the USMS pursuant to instructions to be provided by the Office.

19.     The Court retains jurisdiction to take additional action, enter further orders, and

amend this and any future orders as necessary to implement and enforce this Order.

20.     The Clerk of the Court shall forward four certified copies of this order to Assistant

U.S. Attorney Matthew L. Schwartz, One St. Andrews Plaza, New York, New York, 10007.

**AGREED TO BY:**

Dated: New York, New York
       June 29, 2012

PREET BHARARA
United States Attorney

By: _____

MATTHEW L. SCHWARTZ
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007

Dated: New York, New York
       June 26, 2012

_____

PETER B. MADOFF
Defendant

Dated: New York, New York
       June 29, 2012

Lankler Siffert & Wohl
*Attorneys for Peter B. Madoff*

_____

John R. Wing, Esq.
Charles Spada, Esq.
500 Fifth Avenue
New York, New York 10110

**SO ORDERED.**

Dated: June 29, 2012
       New York, New York

_____

HON. LAURA TAYLOR SWAIN
United States District Judge
Southern District of New York

10

# EXHIBIT A

1.    The real property and appurtenances known as 34 Pheasant Run, Old
      Westbury, New York, together with its appurtenances, improvements, and
      fixtures (indoor and outdoor).

2.    The cooperative apartment known as 975 Park Avenue, Apartment 6B, New
      York, New York, including any and all shares of capital stock and/or the related
      proprietary lease, together with its appurtenances, improvements, and fixtures
      (indoor and outdoor), as well as any associated storage units, parking spaces, or
      maid's units.

3     All valuable, insured or readily salable personal property (including indoor and
      outdoor appliances, electronics, fixtures and furnishings) located at 34 Pheasant
      Run, Old Westbury, New York, but not including the items set forth on Schedule
      I annexed hereto.

4.    All valuable, insured or readily salable personal property (including indoor and
      outdoor appliances, electronics, fixtures and furnishings) located at 975 Park
      Avenue, Apartment 6B, New York, New York, including the contents of any and
      all basement storage units, but not including the items set forth on Schedule I
      annexed hereto.

5.    One 1995 Ferrari 355 Spyder, located at 34 Pheasant Run, Old Westbury,
      New York, together with its fixtures, electronics, equipment, parts and
      accessories.

6.    One 1958 Aston Martin, transferred to Irving H. Picard, in his capacity as the
      Trustee for the liquidation proceedings under the Securities Investor Protection
      Act of Bernard L. Madoff Investment Securities LLC, in or about May 2011.

7.    Any and all jewelry and watches in the possession of Peter B. Madoff, Marion
      Madoff, and/or Shana Madoff-Swanson, including one Rolex watch, but not
      including the items set forth on Schedule I annexed hereto.

8.    All funds and other property on deposit in any and all financial institution
      accounts held in the name(s) or for the benefit of Peter B. Madoff, Marion
      Madoff, Shana Madoff-Swanson, and/or Roger Madoff, and any accounts to
      which said funds have been transferred, and all funds traceable thereto, including
      but not limited to:

      a.    Approximately $5,434,293.57, representing proceeds from the sale of 200
            Algoma Road, Palm Beach, Florida, held in account No. ████9977 at
            Fidelity Investments.

b.   Approximately $2,257,047, representing proceeds from the sale of 8 Barclay Court, East Hampton, New York, held in escrow by George Biono, Esq., Biondo & Hammer LLP, 50 The Plaza, Montauk, New York 11954.

c.   Approximately $2,376,576.58, representing proceeds from the sale of 1 Morton Square, Unit 5DW, New York, New York, transferred to Irving H. Picard, in his capacity as the Trustee for the liquidation proceedings under the Securities Investor Protection Act of Bernard L. Madoff Investment Securities LLC, on or about December 3, 2010.

d.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at TD Bank, including, but not limited to:

    i.   Account No. ████4400, in the name of Peter and/or Marion Madoff (approximately $100);

    ii.   Account No. ████4591, in the name of Peter and/or Marion Madoff (approximately $1,634.76);

    iii.   Checking account No. ████6472, in the name of Shana D. Swanson (approximately $400,000);

e.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to:

    i   IRA account No. ████0575, in the name of Marion Madoff (approximately $112,250);

    ii.   Account No. ████9654, in the name of Marion Madoff (approximately $0);

    iii.   Account No. ████0754, in the name of Marion Madoff (approximately $433,641.16);

    iv.   IRA Account No. ████0576, in the name of Peter Madoff (approximately $0.85);

    v.   Account No. ████3163, in the name of ████████ ████ Trust, Shana D. Skoller, Trustee (approximately $132,813);

f.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to:

    i.   Managed account No. ███4620, in the name of Madoff Family LLC (approximately $190,496).

    ii.   Managed account No. ███1927, in the name of Madoff Family LLC (approximately $403,662).

    iii.   Managed account No. ███3618, in the name of Madoff Family LLC (approximately $43.21).

    iv.   Managed account No. ███2438, in the name of Shana Madoff (approximately $456,999).

g.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to:

    i.   Account No. ███9663, in the name of Peter and/or Marion Madoff (approximately $293,083.24);

    ii.   Account No. ███2873, in the name of Peter and/or Marion Madoff (approximately $212,318.66)

    iii.   Account No. ███9977, in the name of Peter and/or Marion Madoff (approximately $5,434,293.57);

    iv.   Account No. ███6034, in the name of Peter Madoff (approximately $39,401.04);

    v.   Account No. ███6255, in the name of Peter and Marion Madoff (approximately $10,019.31);

    vi.   Account No. ███5779, in the name of Marion Madoff (approximately $236,915.25);

    vii.   Account No. ███3345, in the name of Shana Madoff (approximately $240,734.42);

h.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Sovereign Bank, including, but not limited to:

    i.   Account No. ▆▆▆1055, in the name of Shana Diane Madoff-Swanson, ▆▆▆▆▆▆▆ UTMA (approximately $0).

i.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to:

    i.   Account No. ▆▆▆5351, in the name of Peter and Marion Madoff (approximately $0);

    ii.   Account No. ▆▆▆6812, in the name of Peter and Marion Madoff (approximately $0);

    iii.   Account No. ▆▆▆2483, in the name of Peter and Marion Madoff (approximately $0);

    iv.   Account No. ▆▆▆3278, in the name of Peter B. Madoff (approximately $0);

    v.   Account No. ▆▆▆5343, in the name of Peter B.  Madoff (approximately $0);

    vi.   Account No. ▆▆▆6120, in the name of Peter B. Madoff (approximately $0);

    vii.   Account No. ▆▆▆2751, in the name of Peter and/or Marion Madoff (approximately $0);

    viii.   IRA Account No. ▆▆▆1126, in the name of Peter and/or Marion Madoff (approximately $0);

    ix.   Account No. ▆▆▆328-6, in the name of Essex Realty Development LLC (approximately $5,000);

j.   The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff:

    i.   238 shares of AXA (approximately $5,131.28), held by Peter and/or Marion Madoff;

ii.     1 share of Apache Corp. (approximately $25.23), held by Peter and/or Marion Madoff;

iii.    67 shares of Wells Fargo (approximately $1,744.01), held by Peter and/or Marion Madoff;

iv.     1,000 shares of Laguna Hills, held by Peter and/or Marion Madoff;

v.      8 shares of Forest Oil (approximately $56.64), held by Peter and/or Marion Madoff;

vi.     4 shares of Lone Pine (approximately $10.68), held by Peter and/or Marion Madoff;

vii.    Various New York City municipal bonds maturing August 2026 (approximately $300,000), custodied at JPMorgan Chase;

viii.   State of Israel bonds (approximately $250) held by Shana Madoff;

ix.     Various Series E and EE United States savings bonds (approximately $1,576.83) held by Shana Madoff;

x.      200 shares of Marathon Oil (approximately $130) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees.

xi.     528 shares of ExxonMobile (approximately $248.16) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees.

xii.    Shares of McCormick (approximately $9,445.27) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees.

xiii.   Shares of AT&T (approximately $28,327.56) held by Peter Madoff, Custodian, Shana Madoff UTMA;

xiv.    Shares of Kodak held by Shana Diane Madoff;

k.  All funds, financial instruments, securities, cash, and other property in the 529 College Savings Plans (approximately $64,634.69) for the benefit of ███████████████, held by Peter and/or Marion Madoff.

9.   The contents of any and all safe deposit boxes held in the name or for the benefit of Peter B. Madoff, Marion Madoff, and/or Shana Madoff, including the safe deposit box held at TD Bank, 85th Street and Lexington Avenue, New York, New York, but not including the items set forth on Schedule I annexed hereto.

10.   The contents of the storage unit in Florida, held by Peter and/or Marion Madoff, containing the personal property formerly located at 200 Algoma Road, Palm Beach, Florida, but not including the items set forth on Schedule I annexed hereto.

11.   Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures, including:

i.    Madoff Family LLC;

ii.   Madoff Technologies LLC;

iii.  Madoff Energy Holdings LLC;

iv.   Madoff Brokerage & Trading;

v.    Madoff Securities International Limited;

vi.   Essex Realty LLC;

vii.  Primex Holdings;

viii. Cohmad Securities;

ix.   Sterling III;

x.    Sterling IV;

xi.   Sterling V;

xii.  Duhl & Mayer;

xiii. Summit Water Development Group.

12.   Any and all security, note, debt, investment or other financial instrument or investment vehicle held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff.

13.   Any and all interests in property held by, on behalf of, or legally or beneficially owned by Peter B. Madoff, Marion Madoff, and/or Shana Madoff.

14.   Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to:

i.   A March 23, 2005 note from Peter and/or Marion Madoff to Roger and Jennifer Madoff, in the amount of $2,400,000;

ii.   A March 24, 2005 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,500,000;

iii.   A February 9, 2007 note from Peter and/or Marion Madoff to Shana Skoller (Madoff) as Trustee of the ▇▇▇▇▇▇▇▇▇▇ Trust, in the amount of $100,000;

iv.   A February 27, 2007 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,000,000;

v.   A March 25, 2008 note from Peter Madoff to Harvey W. Nelson, in the amount of $60,000;

vii.   A June 16, 2008 note from Peter Madoff to Shana Madoff and Eric J. Swanson, in the amount of $3,000,000;

vi.   An October 15, 2008 note from Peter Madoff to Seymour Cohen, in the amount of $100,000;

15.   Any and all Social Security payments made or to be made to Peter B. Madoff.

16.   Any and all tax refunds paid to Peter B. Madoff and/or Marion Madoff attributable to assets and liabilities incurred through calendar year 2009.

17.   Any and all income, including but not limited to investment income or dividends, paid to Peter B. Madoff and/or Marion Madoff, but not including (a) any funds or property that may be left to Marion Madoff in settlement of her claims under the forfeiture laws, or (b) any income earned by Marion Madoff as a result of employment after June 29, 2012.

18.   Any and all transfers of funds or other property made by Peter B. Madoff and/or Marion Madoff during the period beginning in the approximately 1996 through

Exhibit A, Page vii of ix

and including June 28, 2012, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, unless the transferee is a bona fide purchaser for value of the right, title, or interest in the funds or other property and was at the time of the transfer reasonably without cause to believe that the property was subject to forfeiture, including but not limited to the following:

a.     $12,000 transferred to or for the benefit of Howard Schwartzberg;

b.     $127,295 transferred to or for the benefit of █████████;

c.     $320,000 transferred to or for the benefit of Andrew Ross Samuels;

19.     Any and all artwork, oriental rugs, furniture, antiques, or other collectibles and/or valuables in the possession of Peter B. Madoff and/or Marion Madoff, but not including the items set forth on Schedule I annexed hereto.

## SCHEDULE I

1.    Two bicycles owned by Jennifer Stevens Dickson and her husband, stored in the basement storage unit associated with 975 Park Avenue, Apartment 6B, New York, New York.

# EXHIBIT B

## Service of Process
1:10-cr-00228-LTS USA v. O'Hara et al

### U.S. District Court

### Southern District of New York

### Notice of Electronic Filing

The following transaction was entered by Monteleoni, Paul on 2/17/2015 at 4:36 PM EST and filed on 2/17/2015

**Case Name:**       USA v. O'Hara et al
**Case Number:**     1:10-cr-00228-LTS
**Filer:**           USA
**Document Number:** 1281

**Docket Text:**
**SERVICE BY PUBLICATION as to Peter Madoff. A Notice of Criminal Forfeiture was published in the www.forfeiture.gov on May 18, 2013 through June 16, 2013. Document filed by USA as to Peter Madoff. (Monteleoni, Paul)**

**1:10-cr-00228-LTS-10 Notice has been electronically mailed to:**

Amanda Bassen    abassen@andrewfrisch.com

Andrew James Frisch    afrisch@andrewfrisch.com

Barbara Ann Ward    Barbara.Ward@usdoj.gov, USANYS.ECF@USDOJ.GOV

Barry W. Agulnick    barry@lawag.com

Daniel Adam Schnapp    dschnapp@foxrothschild.com, hwrenn@foxrothschild.com

David Matthew Abramowicz    david.abramowicz@usdoj.gov

David Matthew Rody    drody@sidley.com, nyefiling@sidley.com

Diane Ferrone    dferrone@sercarzandriopelle.com, dianeferrone@gmail.com

Eric R. Breslin    erbreslin@duanemorris.com

Gary S. Villanueva    garyvillanueva@aol.com

Gordon Mehler    gmehler@mehlerlaw.com, bstadler@mehlerlaw.com

James Kieran Filan    jfilan@jamesfilan.com

Jeremy B. Sporn    jsporn@andrewfrisch.com

John Thomas Zach      jzach@bsfllp.com

John Russell Wing      rwing@lswlaw.com, rmarchitello@lswlaw.com

Jonathan Ephraim Weis Cohen      jonathan.cohen@usdoj.gov, usanys.ecf@usdoj.gov

Julian Jamal Moore      Julian.Moore@usdoj.gov, USANYS.ECF@USDOJ.GOV

Kimberly Ann Yuhas      kyuhas@krantzberman.com

Larry Howard Krantz      lkrantz@krantzberman.com

Lisa Anna Baroni      Lisa.Baroni@usdoj.gov, USANYS.ECF@USDOJ.GOV

Marjorie Joan Peerce      peercem@bssfny.com

Matthew Lane Schwartz      mlschwartz@bsfllp.com

Maurice H. Sercarz      msercarz@sercarzandriopelle.com

Melissa S. Geller      MSGeller@duanemorris.com

Michael D. Mann      mdmann@sidley.com, nyefiling@sidley.com

Michael Patrick Morrissey      mmorrissey@sidley.com, nyefiling@sidley.com

Patrick James Joyce      pjoyce13@juno.com

Paul Michael Monteleoni      paul.monteleoni@usdoj.gov, USANYS.ECF@USDOJ.GOV

Randall Wade Jackson      randall.jackson@usdoj.gov

Reed Michael Brodsky      rbrodsky@gibsondunn.com, cdemana@gibsondunn.com, ngezgin@gibsondunn.com

Regina Griffin      rgriffin@bakerlaw.com, bhbkteam@bakerlaw.com, bhlitdocket@bakerlaw.com

Richard P. Galler      richard@kgalaw.com

Robert Caliendo      rcaliendo@sercarzandriopelle.com

Roland Gustaf Riopelle      rriopelle@juno.com, rriopelle@sercarzandriopelle.com

Sarah Lum      sarahjlum@gmail.com

Susan C. Wolfe      SWolfe@BlankRome.com, jhanner@blankrome.com, kreda@blankrome.com, Tpryan@blankrome.com

Timothy James Treanor      ttreanor@sidley.com, nyefiling@sidley.com

**1:10-cr-00228-LTS-10 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/17/2015] [FileNumber=14271660-0] [2e106b72eef9567ce0e805359ac5ddb47f73fbaa321b0360403ab077f22611cea9cb54bd79f507aec4529e44a4cc354fc8106b59fa38685c9e8358c569a7ead4]]

PREET BHARARA
United States Attorney for the
Southern District of New York
By: PAUL MONTELEONI
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-2219

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,            :     DECLARATION OF
                                       :     PUBLICATION
                                       :
        - v. -                      :
                                       :     S7 10 Cr. 228 (LTS)
PETER MADOFF                    :
                                       :
                       Defendant.     :
------------------------------------------------------------------X

I, PAUL MONTELEONI, pursuant to Title 28, United States Code, Section 1746, hereby declare under penalty of perjury:

That I am an Assistant United States Attorney in the office of the United States Attorney for the Southern District of New York, and

That attached to this declaration are (1) a true and correct copy of a notice of criminal forfeiture in this action, and(2) a true and correct copy of an Advertisement Certification Report, indicating that the aforementioned notice was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, beginning on May 18, 2013 to June 16, 2013 as required by Rule G(4)(a)(iv)(C)of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and

That both of the documents were obtained from a Consolidated Asset Tracking

System maintained by the Department of Justice.


Dated:   New York, New York
         February 17, 2015

                                          PAUL MONTELEONI

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### COURT CASE NUMBER: S7 10 CR. 228 (LTS); NOTICE OF FORFEITURE

Notice is hereby given that on June 29, 2012, in the case of U.S. v. Peter B. Madoff, Court Case Number S7 10 CR. 228 (LTS), the United States District Court for the Southern District of New York entered an Order condemning and forfeiting the following property to the United States of America:

The real property and appurtenances known as 34 Pheasant Run, Old Westbury, New York, together with its appurtenances, improvements, and fixtures (indoor and outdoor). (12-FBI-005277)

The cooperative apartment known as 975 Park Avenue, Apartment 6B, New York, New York, including any and all shares of capital stock and/or the related proprietary lease, together with appurtenances, improvements and fixtures (indoor and outdoor), as well as any associated storage units, parking spaces or maid's units. (12-FBI-005278)

All valuable, insured, or readily salable personal property (including indoor and outdoor appliances, electronics, fixtures and furnishings) located at 34 Pheasant Run, Old Westbury, NY including the following items:
1 Men's Rolex Watch (Brown Band);
1 Men's Cartier Watch (Brown Band);
1 Men's Cartier Watch (Brown Band);
1 Men's Patek Philippe Watch (Black Band; item cracked);
1 Men's Patek Philippe Watch (Yellow Band);
1 Men's A. Lange & Sohne Watch (Black Band);
1 Men's Techno Marine Watch (Black Band);
4 Watch Bands;
1 Paul Smith Cufflinks;
1 Men's Sports Quartz Watch;
1 Men's CAM Watch (Black Band);
1 Men's Bourse de Paris Watch;
1 Rolex "Face" for watch;
1 Pouch with Various Cufflinks;
1 Yellow metal necklace;
1 Yellow metal necklace with purple stone pendant;
3 female watches;
2 watch bands;
17 costume jewerly items;
4 pairs of bracelets;
9 bracelets;
24 pins;
5 pairs of earrings;
3 rings;
2 matching yellow metal rings containing green stones;
1 white metal ring containing clear stones;
1 white metal ring containing clear stones;

1 white metal bracelet;
1 Chanel white balls necklace;
1 white balls necklace;
1 yellow metal necklace;
1 pair of yellow metal earrings;
1 pair of yellow metal earrings;
1 white metal earrings;
1 pair of yellow metal earrings with clear stones;
1 white metal "shoe" pendant with clear stones;
1 Black stone flower pin;
1 yellow metal with white stone pin;
1 yellow metal necklace;
1 yellow metal "Hand" shape pendant with clear stone;
1 pin containing clear stone;
1 sterling silver "knife" letter opener;
1 yellow/white metal with red stone pin;
1 yellow/white metal wih red stone pin;
1 yellow metal "hand" shape pendant;
1 white metal pendant;
1 white metal necklace with heart;
1 pair of white balls charms;
1 pair of yellow metal "heart" charms;
1 yellow metal pin;
1 white/yellow metal box watch;
1 white metal box;
1 white ball earring (single);
1 yellow metal earring (single);
1 pin;
5 watches;
20 pieces of costume jewelry;
1 white ball earrings;
1 costume jewelry;
1 white ball necklace;
1 sterling silver bracelet containing the name "Peter";
1 Rolex small "Face" for watch
(12-FBI-005279)

All valuable, insured or readily salable personal property (including indoor and outdoor appliances, electronics, fixtures and furnishings) located at 975 Park Avenue, Apartment 6B, New York, New York, including contents of any and all basement storage units. (12-FBI-005280)

One 1995 Ferrari 355 Spyder, located at 34 Pheasant Run, Old Westbury, New York, together with its fixtures, electronics, equipment, parts and accessories. (12-FBI-005281)

One 1958 Aston Martin, transferred to Irving H. Picard, in his capacity as the Trustee for the liquidation proceedings under the Securities Investor Protection Act of Bernard L. Madoff Investment Securities LLC, in or about May 2011. (12-FBI-005282)

Any and all jewelry and watches in the possession of Peter B. Madoff, Marion Madoff, and/or Shana Madoff-Swanson, including one Rolex watch and the following items:
1 Green Color Necklace;
1 Green color earrings;
1 Female Cartier Watch;
1 Female Antoine Preziuso watch;
1 Female Bulgari watch;
1 Female Phillip Stein Watch;
1 Famale Bulgari Watch;
1 Female Pater Phillipe Watch;
1 White Stone/White color bracelet;
7 Hermes Bracelets;
2 White Color metal bracelets;
1 Yellow metal/white stone Cartier watch;
1 White metal/white stone bracelet;
1 Pair white stone earrings;
1 white stone/white metal ring;
1 yellow metal/white stone ring;
1 White metal necklace;
1 yellow metal/white stone bracelet;
1 Square white stone earrings;
1 white stone/pink stone earrings;
1 Yellow metal necklace;
1 Yellow metal containing round balls with white stones;
1 Brown material necklace containing white balls;
1 yellow metal containing white stones, containing white ball containing red stone ring;
1 round yellow metal pendant with purple and green stones;
1 Butterfly white metal with white stone pin;
1 yellow metal bow pin with white stones;
1 yellow metal Cartier bracelet;
1 18K yellow metal with white stones and black trim;
1 white metal bracelet;
7 Bulgari pouch with 7 yellow metal with white stone;
6 pairs of yellow metal earrings;
2 pairs of white metal earrings;
4 pairs of yellow metal with white center balls;
1 pair of white metal with white stone dangle earrings;
1 pair of white metal with white stone hoops;
1 pair of white metal with white stone and purple stone earrings;
1 pair of yellow metal hoop earrings containing white stones;
1 pair of yellow metal with white stones lightening bolts earrings;
1 pair of yellow metal with white stones circle dangle earrings;
1 pair of yellow metal with white stones circle earrings;
1 pair of yellow metal with white stone earrings;
1 pair of yellow metal circle earrings with clear stones;
1 yellow metal earrings with clear and red stones;
1 white ball earrings with clear color stones;

1 yellow metal earrings with red and clear stones;
1 Elephant/Flower earrings;
1 yellow metal screw driver;
4 Costome necklaces (Various colors);
4 Pair of earrings;
11 rings;
1 Toggle Bracelet;
6 Pair of earrings;
2 Necklaces;
1 Loose earing;
5 Pairs of earrings;
1 Hermes Watch (Brown);
1 Chanel Pin;
1 Chanel Bracelet;
1 Chanel Box;
3 Watches;
2 Sets of cufflinks;
3 Rings;
1 Chanel Set containing 1 watch and 1 ring;
1 Men's Rolex Black strap watch;
1 Female white metal Avalon watch with white stones;
1 Waltham Watch;
1 Cartier watch black strap;
1 Waltham pocket watch and ring;
1 Yellow metal with white stone ring;
9 cufflink sets;
1 Ring;
1 White Metal bracelet and earrings with clear and blue stones;
1 Necklace with white balls with certificate of appraisal;
3 yellow metal pins;
1 pair of white metal with clear stone earrings;
1 yellow metal wedding band;
1 White metal with clear stone ring;
2 men's watches;
8 Hermes bracelets with brown Hermes bag;
1 Yellow metal bracelet marked 1984;
4 bracelets;
1 pair white metal earrings (silver);
3 watches;
4 Bracelets;
2 Hermes Bracelets with 1 blue Hermes bag;
1 yellow black Verdura bracelet (Damaged);
1 Le Coultre metal watch with serial number 804635 Item # 80;
1 Frank Muller Black band watch,;
1 yellow metal necklace and earrings (set);
4 necklaces and one Tiffany bag;
2 pair of earrings;
1 white metal with white stone necklace;
1 Peter Madoff's high school ring;

1 Mens Swatch watch;
1 Duchamp London cufflinks (13 pairs) (12-FBI-005283).

All funds and other property on deposit in any and all financial institution accounts held in the name(s) or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff-Swanson, and/or Roger Madoff, and any accounts to which said funds have been transferred, and all funds traceable thereto, including but not limited to:

Approximately $5,434,293.57, representing proceeds from the sale of 200 Algoma Road, Palm Beach, Florida, held in account No. XXX-XX9977 at Fidelity Investments. (12-FBI-005284)

Approximately $2,257,047, representing proceeds from the sale of 8 Barclay Court, East Hampton, New York, held in escrow by George Biono, Esq., Biondo & Hammer LLP, 50 The Plaza, Montauk, New York 11954. (12-FBI-005285)

Approximately $2,376,576.58, representing proceeds from the sale of 1 Morton Square Unit 5DW, New York, New York, transferred Irving H. Picard, in this capacity as the Trustee for the liquidation proceedings under Securities Investor Protection Act of Bernard L. Madoff Investment Securities LLC, on or about December 3, 2010. (12-FBI-005286)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at TD Bank, including, but not limited to Account No. XXX-XXX-4400, in the name of Peter and/or Marion Madoff (approximately $100). (12-FBI-005287)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at TD Bank, including, but not limited to Account No. XXX-XXX-4591, in the name of Peter and/or Marion Madoff (approximately $1,634.76). (12-FBI-005288)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at TD Bank, including, but not limited to Checking Account No. XXX-XXX-6472, in the name of Shana D. Swanson (approximately $400,000). (12-FBI-005829)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to, IRA account No. XXXX0575, in the name of Marion Madoff (approximately $112,250). (12-FBI-005290)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to: Account No. 03779654, in the name of Marion Madoff (approximately $0). (12-FBI-005291)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to: Account No. 04300754, in the name of Marion Madoff (approximately $433,641.16). (12-FBI-005292)

All funds, financial instruments, securities, cash, and other property on deposit in

any and all accounts held at JPMorgan Chase Bank, including, but not limited to: IRA Account No. 05120576, in the name of Peter Madoff (approximately $0.85). (12-FBI-005293)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to: Account No. 045-13723163, in the name of xxxxxxx xxxxxxx xxxxxxx, Trust Shana D. Skoller, Trustee (approximately $132,813). (12-FBI-005294)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to: Managed acct No. 2A5-034620, in the name of Madoff Family LLC (approx $190,496). (12-FBI-005295)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to: Managed account No. 22A-011927, in name of Madoff Family LLC (approx $403,662). (12-FBI-005296)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to: Managed acct No. 214-343618, in the name of Madoff Family LLC (approx $43.21). (12-FBI-005297)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to: Managed account No. 214-342438, in the name of Shana Madoff (approx $456,999). (12-FBI-005298)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. 145949663, in the name of Peter and/or Marion Madoff (approximately $293,083.24). (12-FBI-005299)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. X59-542873, in the name of Peter and/or Marion Madoff (approximately $212,318.66). (12-FBI-005300)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. X50-919977, in the name of Peter and/or Marion Madoff (approximately $5,434,293.57). (12-FBI-005301)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. 48906034, in the name of Peter Madoff (approximately $39,401.04). (12-FBI-005302)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. 48906255, in the name of Peter and Marion Madoff (approximately $10,019.31). (12-FBI-005303)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. 164735779, in the name of Marion Madoff (approximately $236,915.25). (12-FBI-005304)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to: Account No. SM013345, in the name of Shana Madoff (approximately $240,734.42). (12-FBI-005305)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Sovereign Bank, including, but not limited to: Acct No. 3572611055, in the name of Shana Diane Madoff-Swanson, xxxxx xxxxx xxxxxxx UTMA (approx $0). (12-FBI-005306)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 134705351, in the name of Peter and Marion Madoff (approximately $0). (12-FBI-005307)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 196316812, in the name of Peter and Marion Madoff (approximately $0). (12-FBI-005308)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 134022483, in the name of Peter and Marion Madoff (approximately $0). (12-FBI-005309)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 006103278, in the name of Peter B. Madoff (approximately $0). (12-FBI-005310)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 134705343, in the name of Peter B. Madoff (approximately $0). (12-FBI-005311)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 006566120, in the name of Peter B. Madoff (approximately $0). (12-FBI-005312)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No. 006102751, in the name of Peter and/or Marion Madoff (approximately $0). (12-FBI-005313)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: IRA Account No. 006671126, in the name of Peter and/or Marion Madoff (approximately $0). (12-FBI-005314)

All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to: Account No.

006-10328-6, in the name of Essex Realty Development LLC (approximately $5,000). (12-FBI-005315)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff, 238 shares of AXA (approximately $5,131.28), held by Peter and/or Marion Madoff. (12-FBI-005316)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: One share of Apache Corp. (approximately $25.23), held by Peter and/or Marion Madoff. (12-FBI-005317)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 67 shares of Wells Fargo (approximately $1,744.01), held by Peter and/or Marion Madoff. (12-FBI-005318)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 1,000 shares of Laguna Hills, held by Peter and/or Marion Madoff. (12-FBI-005319)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 8 shares of Forest Oil (approximately $56.64), held by Peter and/or Marion Madoff. (12-FBI-005320)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 4 shares of Lone Pine (approximately $10.68), held by Peter and/or Marion Madoff. (12-FBI-005321)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: Various New York City municipal bonds maturing August 2026 (approximately $300,000), custodied at JPMorgan Chase. (12-FBI-005322)

The following securities held by or for Peter B. Madoff, Marion Mdoff, and Shana Madoff: State of Israel Bonds (approximatley $250) held by Shana Madoff. (12-FBI-005323)

The following securities held by or for Peter B. Madoff, Marion Madoff, and Shana Madoff: Various Series E and EE United States savings bonds (approximately $1,576.83) held by Shana Madoff. (12-FBI-005324)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 200 shares of Marathon Oil (approximately $130) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. (12-FBI-005325)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: 528 shares of Exxon Mobile (approximately $248.16) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. (12-FBI-005326)

The following securities held by or for Peter B. Madoff, Marion Madoff, and Shana Madoff: Shares of McCormick (approximately $9,445.27) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. (12-FBI-005327)

The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff: Shares of AT&T (approximately $28,327.56) held by Peter Madoff, Custodian, Shana Madoff UTMA. (12-FBI-005328)

The following securities held by or for Peter B. Madoff, Marion Madoff, and Shana Madoff: Shares of Kodak held by Shana Diane Madoff. (12-FBI-005329)

All funds, financial instruments, securities, cash, and other property in the 529 College Savings Plans (approximately $64,634.69), held by Peter and/or Marion Madoff. (12-FBI-005330)

The contents of any and all safe deposit boxes held in the name or for the benefit of Peter B. Madoff, Marion Madoff and/or Shana Madoff, including the safe deposit box held at TD Bank, 85th Street and Lexington Avenue, New York, New York. Including the following items:
1 White Metal Ring with Large Princess cut stone;
1 White Metal with Clear Stones Bracelet;
1 Yellow metal and white stone necklace, with a matching pair of earrings;
1 White metal with all clear stones necklace, and a pair of white metal and or clear stone earrings;
1 3 White metal and clear stone pins;
1 Pair of clear stone and pink stone earrings;
1 Yellow metal pendant;
1 Men's Vacheron Constantin watch, Ser No: 42005729032;
1 Chopard watch, Ser No: 507153 445;
1 Black metal and clear stone ball necklace, with black metal ball earrings;
1 3 empty bags and 1 blue empty jewlery box which was seized from TD Bank on or about February 04, 2013. (12-FBI-005331)

The contents of the storage unit in Florida held by Peter and/or Marion Madoff, containing the personal property formerly located at 200 Algoma Road, Palm Beach, Florida. (12-FBI-005332)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Madoff Family LLC. (12-FBI-005333)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Madoff Technologies LLC. (12-FBI-005334)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Madoff Energy Holdings LLC. (12-FBI-005335)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Madoff Brokerage and Trading.

(12-FBI-005336)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Madoff Securities International Limited. (12-FBI-005337)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Essex Realty LLC. (12-FBI-005338)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Primex Holdings. (12-FBI-005339)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Cohmad Securities. (12-FBI-005340)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Sterling III. (12-FBI-005341)

Any and all interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Sterling IV. (12-FBI-005342)

Any andall interest held in the name of, behalof or for the benefit of Peter/ Marion/ Shana/Roger Madoff in the assets of any& all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including:  Sterling V. (12-FBI-005343)

Any and all interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Duhl & Mayer. (12-FBI-005344)

Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates & joint ventures, including: Summit Water Development Group. (12-FBI-005345)

Any and all security, note, debt, investment or other financial instrument or investment vehicle held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff. (12-FBI-005346)

Any and all interests in property held by, on behalf of, or legally or beneficially owned by Peter B. Madoff, Marion Madoff, and/or Shana Madoff. (12-FBI-005347)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A March 23, 2005 note from Peter and/or Marion Madoff to Roger and Jennifer Madoff, in the amount of $2,400,000. (12-FBI-005348)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A March 24, 2005 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,500,000. (12-FBI-005349)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A February 9, 2007 note from Peter and/or Marion Madoff to Shana Skoller (Madoff) in the amount of $100,000. (12-FBI-005350)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A February 27, 2007 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,000,000. (12-FBI-005351)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A March 25, 2008 note from Peter Madoff to Harvey W. Nelson, in the amount of $60,000. (12-FBI-005352)

Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: A June 16, 2008 note from Peter Madoff to Shana Madoff and Eric J. Swanson, in the amount of $3,000,000. (12-FBI-005353)

Any and all loans, promissory notes, receivables, security or financing

arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing agreement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to: An October 15, 2008 note from Peter Madoff to Seymour Cohen, in the amount of $100,000. (12-FBI-005354)

Any and all Social Security payments made or to be made to Peter B. Madoff. (12-FBI-005355)

Any and all tax refunds paid to Peter B. Madoff and/or Marion Madoff attributable to assets and liabilities incurred through calendar year 2009. (12-FBI-005356)

Any and all income, including but not limited to investment income or dividends, paid to Peter B. Madoff and/or Marion Madoff, but not including (a)any funds or property that may be left to Marion Madoff in settlement of her claim under the forfeiture laws, or (b) any income earned by Marion Madoff as a result of employment after June 29, 2012. (12-FBI-005357)

Any and all transfers of funds or other property made by Peter B. Madoff and/or Marion Madoff during the period beginning in the approximately 1996 through and including June 28, 2012, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, unless the transferee is a bona fide purchaser for value of the right, title, or interest in the funds or other property and was at the time of the transfer reasonably without cause to believe that the property was subject to forfeiture, including but not limited to the following: $12,000 transferred to or for the benefit of Howard Schwartzberg. (12-FBI-005358)

Any and all transfers of funds or other property made by Peter B. Madoff and/or Marion Madoff during the period beginning in the approximately 1996 through and including June 28, 2012, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, unless the transferee is a bona fide purchaser for value of the right, title, or interest in the funds or other property and was at the time of the transfer reasonably without cause to believe that the property was subject to forfeiture, including but not limited to the following: Any and all transfers of funds $127,295 transferred to or for the benefit of xxxxxxx xxxxxxx. (12-FBI-005359)

Any and all transfers of funds or other property made by Peter B. Madoff and/or Marion Madoff during the period beginning in the approximately 1996 through and including June 28, 2012, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, unless the transferee is a bona fide purchaser for value of the right, title, or interest in the funds or other property and was at the time of the transfer reasonably without cause to believe that the property was subject to forfeiture, including but not limited to the following: Any and all transfers of funds $320,000 transferred to or for the benefit of Andrew Ross Samuels. (12-FBI-005360)

Any and all artwork, oriental rugs, furniture, antiques, or other collectibles and/or valuables in the possession of Peter B. Madoff and/or Marion Madoff. (12-FBI-005361)

Two bicycles owned by Jennifer Stevens Dickson and her husband, stored in the basement storage unit associated with 975 Park Avenue, Apartment 6B, New York, New York. (12-FBI-005362)

$18,222.00 in United States currency located in a safe in the bedroom of 34 Pheasant Run, Old Westbury, NY;
$22.00 in United States Currency loose in 34 Pheasant Run, Old Westbury, NY. (13-FBI-001398)

Any and all artwork, oriental rugs, furniture, antiques, or other collectibles and/or valuables in the possession of Peter B. Madoff and/or Marion Madoff, including the following items:
1 12 x 4 Rug - red diamond design;
1 8.5 x 5.5 rug - black flower design;
1 13 x 19 rug - white no design;
1 20.5 x 11.5 rug - red design;
1 6.5 x 4.5 rug - red, brown, flower design;
1 16 x 4.5 rug - yellow, red flower design;
1 10 x 23 rug - brown, yellow, blue flower and plant design;
1 4 x 3 rug red,
which was seized on or about January 25, 2013 at 34 Pheasunt Run, Old Westbury, NY. (13-FBI-001445)

Any and all artwork, oriental rugs, furniture antiques, or other collectables and/or valuables in the possession of Peter and/or Marion Madoff, including the following items:
2 Dogs by Sam Fulton;
Dog & Mouse by E. Coolep;
Dog & Mouse/Broom by E. Coolep;
1 Man in Grass/Pond by L. Stepano;
1 Black Dog by J.H. Beard N.A. 1881;
Flowers in Vase by Lillie Horrord;
3 Horses by C. Barber;
Lady & Little Girl by M. Goodman 1891;
"Haddon Hall from The Meadows" by A. deBreanski Jun;
"Dovedale from Lovers Leaps" by A. deBreanski Jun;
Boy with Dog & Ball by P. Martin Genrebild 1821-1901;
Mother/Daughter in Grass Field by WM Dacres Adams;
Sheeps, No Signature;
House/Bridge/2 Horses with Lady, No Signature;
Horse Picture by Old Cade;
Horse Picture "The Godolphin Barb";
Abstract Picture; 1 Table with Chair Painting;
Dog by Gladys Emerson;
Lady Praying by M. Maurice;
Poster Roy Lichtensein 1962 Limited # 412;
Poster by David Hockney;
Pablo Picasso Print "Man on Horse";
5 Men Sittiing at Table;
"The West Chester Hunt" - Framed;

Little Girl with Sling Shot by Roget;
"Cold Comfort" 15/40 by Ann Maiel Queshe;
"La Toilette";
"La Viste Inattendue";
Naked Lady;
Tree/Boats on Lake;
Guy & Girl on Boat;
Cow;
3 Scenery Water Paint 19/40;
Dorset Dipoych 32/90 by Christophs Penney; and
Park Trees 147/150 by Christophs Penny. (13-FBI-001523)

Furniture seized from Peter and/or Marion Madoff including the following items:
1 Bridge table with 4 chairs;
1 Leather Green couch with 4 pillows;
1 Large coffee table;
1 Round side table;
1 Pair of green flower material chairs with leg rest;
1 Small side table;
2 Chairs with pillow;
2 small book tables;
1 Couch with Ottoman;
1 Coffee table;
1 Wall table;
1 Four deck chase;
1 Brown leather ottoman;
1 Wooden Stand;
2 couches with pillows;
1 Large Glass Coffee Table;
2 Green fabric chairs;
2 Small coffee tables;
1 Wooden stand up table;
1 chair with stripe fabric (red & green);
1 chair with green stripes;
1 Small 3 deck shelf wooden side table;
1 Small wooden table;
1 Round wooden table;
1 Round wooden table;
1 Wooden side table-oval shape;
1 Wooden Desk chair - fabric seating;
1 Large wooden armoire;
1 Large wooden dining table with 12 chairs;
1 Round wooden table with 6 chairs;
2 Wooden wall tables;
1 Wooden childs chair;
3 Deck wooden cater server on wheels;
1 Large wooden desk table;
1 Wooden work desk with 2 chairs;
1 Flower fabric rest chair;

1 Wooden book shelf;
1 Ottoman with flower fabric;
1 Small wooden side table;
1 Flower fabric chair with Leg rest;
1 Wooden desk with chair;
1 Wooden 4 deck shelf book case;
1 Round wooden table with black marble top;
1 Wooden 3 deck dresser with white marble top;
1 Stripe fabric ottoman;
1 Round ottoman;
1 wooden wall table;
1 Brass bed frame;
2 side tables;
2 stripe chairs;
1 Large wooden TV chest;
1 Wooden 5 deck book shelf;
1 Wooden 3 deck dresser;
1 Wooden ottoman;
1 Wooden desk with chair;
1 Wooden chair;
1 Wooden bed frame;
1 Round wooden table;
1 Wooden 5 deck TV stand;
2 Metal twin bed frame;
2 White wood side bed tables;
1 Wooden 3 deck drawer;
1 Wooden twin size bed frame;
1 wooden 3 deck dresser;
1 Childs wooden chair;
1 wooden side table;
1 Custom size bed with drape covers;
2 bedside tables;
1 Chair (red hatch color);
1 Chair with foot rest (flower design);
1 Wooden table;
1 small chair (red & white stripe);
1 Wooden chest drawer;
1 Sofa (red hatch color);
1 Small table;
1 Wooden table;
1 Bedside seat (red);
1 Seating bench (Striped Color);
1 Table with granite top (Flower design);
1 Wooden hat holder;
1 Wooden table;
1 Wooden stool;
1 Wooden desk;
1 Chair (flower design);
1 All marble table;

1 Round wooden table with 5 chairs;
1 Fabric chair;
1 White wood ottoman. (13-FBI-001524)

Household Decor items seized from Peter and/or Marion Madoff located at 34
Pheasant Run, Old Westbury New York, including the following items:
1 Center bowl and plate (on bridge table);
2 Standing lamps;
2 tall candle stands;
3 Humidor boxes;
1 basket for fire wood;
1 standing lamp;
1 "Bull" figure;
1 small Tiffany Clock;
1 book box;
1 Glass serving ware, Gold candle stand, vase;
1 Large cup vase;
2 side couch reading lamps;
1 side couch magazine rack;
4 wooden stand up trays;
1 Metal fire place accessories;
2 fire place statues,
1 stone like statue;
9 book shelf accessoires;
1 seiko clock;
2 candle stick stands;
2 standing side couch lamps;
2 candle stick stands;
10 pairs of glass candle stick holders,
1 glass plate,
1 glass bowl,
2 vases;
2 glass vases;
1 metal decor item;
2 mini pots;
1 vase;
2 matching lamps with attached candle stick holders;
2 large vases;
2 wooden stand up decor items;
1 Brass fire place accessories;
13 silver items;
9 picture frames;
1 Glass center vase;
1 Large glass candle holders;
13 silver cater pieces;
7 serving pieces,
2 vases;
2 blue glass vases;
2 large five stick candle holders;

1 Silver stand up bottle holder;
1 Metal "Warwick" door stopper;
1 Glass lamp;
1 small Cartier clock,
2 small Tiffany clocks;
1 Brass lamp;
1 Wooden jewelry case with mirror;
1 Glass/Silver cosmetic items;
1 Various decor items,
1 small Tiffany clock;
1 Brass lamp;
1 Brass mirror;
1 Wooden basket;
1 Wooden jewelry case with mirror and clock;
11 Oriental designed vases;
1 Brass stand up lamp;
1 Oriental Lamp;
1 Lamp and mirror;
2 Wooden baskets;
1 Brass fire place accessories;
1 small Tiffany Clock;
1 Mirror;
1 Brass desk lamp;
1 Printer;
1 Desk acccessories;
1 Stand-up Brass Lamp;
1 Glass Lamp;
1 Round Wooden storage;
2 Laundry baskets;
4 Ceramic items;
1 Iron Board, vacuum,
2 dryer racks,
1 steamer;
1 Wooden Jewelry chest;
1 Round mirror;
1 assorted dolls;
1 Large wall clock;
1 Box of Picture frames;
2 Ceramic Oriental vases;
2 Gold color plated large stands;
1 metal vase;
1 Large mirror;
1 Grandfather Standing clock (London);
1 Umbrella/Cane holder;
1 Mirror;
1 powder and makeup dish (flower deisgn);
1 Glass vase;
1 Large mirror;
1 Brass magnifying glass and mail opener;

1 desk lamp;
1 Metal box;
2 Bedside lamps (red);
3 small clocks (two are from Tiffany's);
2 candle stick holders;
1 bust;
1 wooden box;
2 crystal vases;
2 brass standing lamps;
1 small wooden table w/pull out extension;
1 glass jar;
1 glass plate;
1 fire place accessories;
1 mirror;
3 Ceramic pieces (maroon color);
2 Ceramic storage items;
1 Candle stick holder;
7 Ornaments (on bookcase);
2 Brass standing lamps. (13-FBI-001525),

Electronic items seized from Peter and/or Marion Madoff at 34 Pheasant Run, Old Westbury, New York, including the following items:
2 Televisions and 1 Small Aiwa radio. (13-FBI-001526)

Books seized from Peter and/or Marion Madoff at 34 Pheasant Run, Old Westbury, New York, including the following items:
1 Bernard Investment Securities;
8 Books by Charles Dickens;
8 Historical Romance;
1 Volume 1 - 5 Charles Dickens;
4 the Poetry of Burns;
11 Arcana Coelestia;
15 Autobiography;
13 Nietzsche;
17 Brethrle;
10 Universal Standard Encylopedia;
28 Mark Twain;
11 Annual Scientific Discovery;
12 Oriental Series;
15 Charles Dickens;
5 Dialogues of Plato;
8 100 Best Short Stories;
5 Holmes Works Volume 1 - 5;
9 Jack London;
2 The Life of Richard Cobden;
11 DeQuincey's Writing by Masson;
1 Ingelow;
1 Selected Poems by Robert Burns;
1 Minstrelsy Ancient & Modern;
1 Ernest Maltravers;

1 A Strange Story by Sir Edward Bulwer Lytton;
4 Gems of the World's Best Classics;
2 Ennyson's Poetical Works;
1 Cabbages & Kings by O'Henry;
1 Rolling Stones by O'Henry;
8 Thackeray;
7 Poetical Works;
6 Gaboriau;
15 Universal Standard Encylopedia;
16 Scribners;
4 Don Quixote;
1 Black's Law Dictionary;
2 Britannica Dictionary;
1 Emily Dickenson;
2 World Book Dictionary;
3 History of Criticism;
9 Works of Shakesphere;
6 History of English Poetry;
4 Holmes Works;
22 World Book;
29 Yearbook;
6 Modern Eloquence;
15 Stoddard's Lectures;
11 Goethe;
7 Wordsworth Poetical Works;
6 Gibbon The Roman Empire;
11 Balzac;
1 The Iliad by Homer;
1 Chumash;
1 Tomach Bible;
15 Stoddard Lectures;
16 Ibsen;
320 Various Books;
56 Various Books;
22 Various Books;
1 Various Books;
34 English Men of Letters. (13-FBI-001527),

Kitchen items seized from Peter and/or Marion Madoff at 34 Pheasant Run, old Westbury, New York, including the following items:
15 Sobre Crystal Glasses;
37 Wine glasses;
18 Champagne Glasses;
8 High ball glasses;
16 Drinking glasses;
5 White tea cups;
3 Saucers;
1 Creamer;
8 Dessert dishes;

1 Royal Crown Derby English Bone Dinner Set;
1 Holmes and Edward Deep Silver Dining ware set;
1 Blue Deleft-Milton 1793 Chinaware;
1 Brass Cooking Pots/Pans;
1 Oriental Ceramic Dishware. (13-FBI-001528)

Clothing seized from Peter and/or Marion Madoff at 34 Pheasant Run, Old
Westbury, New York, including the following items:
14 Men's shorts (Slya, Jill Sanders);
6 Sweaters (Ralph Lauren, Nike Joya Cole);
7 Scarves;
9 Belts;
2 Drawers of Vests;
2 Loafers,
1 Sneakers,
2 Slippers;
24 Designer Shoes (Womens)(Prada, Armani, Chanel, Jimmy Choo);
10 Designer Sandals;
1 Louis Vuitton Garment Bag;
11 Garment Bags (Store Given);
3 Tote Bags;
4 Robes;
4 Chanel Blazers;
7 Dresses (Ceasars, Prada);
1 Chanel Coat;
1 Dress Suit (Kiton);
2 Armani Suit;
1 Narcisco Rodriguez Suit;
2 Bathrobes in bathroom, Frette Brand;
1 Loro Piana Cashmere Robe;
1 Gucci backpack;
1 Eagle Creek bag;
1 Chanel gold shell bag;
1 Shawl (black and gold);
5 Leather belts;
1 Bottega Veneta backpack;
5 Dresses (Calypso, Theory, Jill Sanders);
1 Sweater (Margaret O'Leary);
1 Giorgio Armani dress;
16 Pairs of Pants (Jill Sanders, Chanel, Armani, Prada);
9 Pairs of Pantsuits (Alberto Biani, Jill Sanders, Armani);
9 Pairs of Manolo Blahnik;
3 Pairs of Prada shoes;
3 Pairs of Chanel shoes;
1 Pair of Jimmy Choo shoes;
1 Pair of Ralph Lauren Shoes;
4 Suits (Giorgio Armani);
1 Chanel Coat;
4 Pairs of Pants;

1 Dress - Chanel;
1 skirt;
1 shirt;
4 skirts;
8 Blazers/Jackets (Armani, Heita Bretz, Conolly);
2 Swede shirts (Laura Piana);
1 Leather jacket (Jill Sanders) Blue color;
2 Pairs of Jeans (Gap);
1 Diane Von Furstenberg shirt;
1 Burberry shirt;
1 Pair of Pants (Prada);
1 Shirt (Fiorini);
10 Men's Dress Shirts (Armani);
1 Jacket Baretta;
1 Vest;
1 Denim Shirt (Dakota Blue);
3 Pairs of blue denim jeans;
1 pair of black denim jeans;
2 pairs of black dockers pants;
4 pair of pants (khaki);
6 pairs of men's loafers;
1 pair of men's sneakers;
1 men's travel case;
1 pair of men's sneakers;
3 men's grooming cases;
9 Men's T-shirts (Armani) (Multicolor);
5 Polo Sweaters;
19 Printed & plain t-shirts (Designer);
14 Polo shirts (Laura Pian);
5 Fleece Sweaters (Polo Ralph Lauren);
12 Men's Button down dress shirts (Armani, Paul Smith);
4 Men's Suits (3 Armani, 1 Tincati);
1 Leather Sport Jacket (Peter Elliot);
5 Corduroy Sport Jacket;
7 Belts;
17 Sweaters;
3 Pairs dress shoes;
1 Mac Turtleneck (Armani);
20 Men's Ties;
10 Bow Ties;
21 Golf Polo Shirts (Peter Milten, Ralph Lauren);
9 Men's Golfing Shorts (Ralph Lauren);
3 Men's Bathing suit;
6 Lounge Wear;
1 Yacht Club Wind Breaker;
14 Men's Button Down Casual shirts (Peter Elliot, Etro Milano, Bilebrequin, Ralph Lauren);
4 Winter Sports Jackets;
1 Luigi Barelli White Shirt;

1 White Tuxedo Jacket;
5 Corduroy/Winter Pants;
3 White Slacks;
1 pair of sneakers;
1 Leather Jacket;
2 Blazers (Theory);
1 Suit,
2 Vest;
1 Prada Jacket;
1 Ralph Lauren Shirt;
2 Sweaters (Chanel, Maline Biger);
1 Express Blazer;
1 Joseph Blazer;
3 Blouses;
11 Pairs of Pants;
1 Boots;
3 Designer Shoes;
1 Sneakers
1 Workout Outfit;
25 Evening Gowns;
12 Men's Ties;
2 Suspenders;
3 Belts;
1 Jericho Baseball Jacket;
1 Sport Coat;
1 Red Jacket;
2 Sport Coats;
1 Slacks;
1 Dress Shirt, button down;
1 Armani button down shirt;
1 Donna Karan button down shirt;
1 Short Sleve Button down shirt;
1 Vest;
3 Slacks;
4 Pairs of Men's Shoes;
5 Pairs of Jeans;
1 Pair of Shoes;
6 Shirts/Tops;
1 Skirt/Shorts;
2 Tops;
1 bottom;
1 Robe;
1 Scarf;
3 Blankets;
5 Jeans;
1 shoes;
6 shirts;
1 skirt;
2 tops;

1 robe;
1 scarf;
3 blankets;
8 Outer Wear Jackets Men's & Women's (Bogner);
2 Vests;
18 Overcoats (Armani, Polo, Jill Sanders);
1 Mets Jacket with "Madoff" on back, with "Marion" on front;
1 Warner Bros Jacket;
9 Women's Coat (Etno, Polo Ralph Lauren);
1 Overthrow/Shawl;
14 Pairs of Gloves;
1 Wool Hat;
5 Scarves;
1 Cowboy Hat;
9 Cashmere Scarves;
4 Winter Scarves;
4 Belts for Jackets;
2 Men's Hats;
2 Pairs of Boots. (13-FBI-001529)

Steinway Piano which was seized from Peter and/or Marion Madoff on or about January 25, 2013 at 34 Pheasunt Run, Old Westbury, NY (13-FBI-001665)

Furniture items from Peter and/or Marion Madoff at 975 Park Avenue, Apartment 6B, New York, New York which included the following items:
Table with 3 items: Two Wooden chairs; Living room table and
Bedroom chair lamp table;
1 Chair;
1 Entertainment Dresser; and
1 Headboard. (13-FBI-001787)

Clothing items from Peter and/or Marion Madoff at 975 Park Avenue, Apartment 6B, New York, New York, which included the following items:
1 Sports Coats size 52;
1 Suits/Shirts size 52;
Women's shoes;
1 Men's Shoes; and
Multiple coats/jackets (13-FBI-001788).

Home Decor items from the home of Peter and/or Marion Madoff located at 975 Park Avenue, Apartment 6B, New York, New York, which included the following items:
1 Antique scale on shelf;
1 Wooden trunk w/ Large Candle Holder, Large sea shell;
1 Wall in hallway - DLR to pantry (Cirular Sieves);
1 Candle Holder;
1 Silver Dish;
1 Wood valuables box;
1 Chest, Lamp, Mirror; and
1 Small chest. (13-FBI-001789)

Electronic items seized from Peter and/or Marion Madoff at 975 Park Avenue, Apartment 6B, New York, New York. (13-FBI-001790)

Kitchen items seized from Peter and/or Marion Madoff at 975 Park Avenue, Apartment 6B, New York, New York including the following items:
1 Ralph Lauren Silverware located in pantry drawer;
1 Plates set;
Wine Glasses etc. and
1 Silver Platters. (13-FBI-001791)

Any and all artwork in the posession of Peter B. Madoff and/or Marion Madoff, including the following items:
1 Photo of Man at "Pies" Automat;
1 Black and white drawing;
1 Two drawings;
1 Framed Pictured of 3 Women Reading;
1 Framed Picture of Laundry;
1 Framed Picture of "Hamburgers 40 Cents";
1 Framed picture "I need";
1 Framed picture of Street Stickball Game;
1 Framed picture of Women (Tupperware);
1 Framed picture of McDonalds;
1 Photo on wall of Vehicles;
1 Photo of Mountains with Signature '99. (13-FBI-001792)

Any and all Books in the possession of Peter B. Madoff and/or Marion Madoff including the following items:
Books on Shelf;
Multiple Books (left side);
Books on Shelf;
1 Sports "Lexicon";
Books on Shelf. (13-FBI-001793)

Any and all rugs in the possession of Peter B. Madoff and/or Marion Madoff. (13-FBI-001795)

Any and all clothing items in the possession of Shana Madoff. (13-FBI-001796)

Any and all Furniture seized from Shana Madoff. (13-FBI-001797)

Any and all kitchen items in the possession of Shana Madoff. (13-FBI-001798)

Any and all Household Decor Items in the possession of Shana Madoff. (13-FBI-001799)

Any and all books in the possession of Shana Madoff. (13-FBI-001800)

Pool Table and gym equipment in the possession seized from Shana Madoff. (13-FBI-001801)

Any and all artwork, oriental rugs, furniture, antiques,or other collectibles and/or valuables in the possession of Peter B. Madoff and/or Marion Madoff.

(13-FBI-002082)

Any and all Electronic Equipment in the possession of Shana Madoff. (13-FBI-002126)

Any and all art work in the possession of Shana Madoff. (13-FBI-002127)

The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming interest in the forfeited property must file a Petition within 60 days of the first date of publication (May 18, 2013) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1). The petition must be filed with the Clerk of the Court, United States District Court, 500 Pearl Street, Room 120, New York, NY 10007, and a copy served upon Assistant United States Attorney Paul M. Monteleoni, One St. Andrew's Plaza, New York, NY 10007. The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

Following the Court's disposition of all petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.



## Advertisement Certification Report

The Notice of Publication was available on the www.forfeiture.gov web site for at least 18 hours per day between May 18, 2013 and June 16, 2013. Below is a summary report that identifies the uptime for each day within the publication period and reports the results of the web monitoring system's daily check that verifies that the advertisement was available each day.

U.S. v. Peter B. Madoff

**Court Case No:**    S7 10 CR. 228 (LTS)
**For Asset ID(s):**    See Attached Advertisement Copy

| Consecutive Calendar Day Count | Date Advertisement Appeared on the Web Site | Total Hours Web Site was Available during Calendar Day | Verification that Advertisement existed on Web Site |
|:---:|:---:|:---:|:---:|
| 1 | 05/18/2013 | 24.0 | Verified |
| 2 | 05/19/2013 | 24.0 | Verified |
| 3 | 05/20/2013 | 24.0 | Verified |
| 4 | 05/21/2013 | 24.0 | Verified |
| 5 | 05/22/2013 | 24.0 | Verified |
| 6 | 05/23/2013 | 24.0 | Verified |
| 7 | 05/24/2013 | 23.9 | Verified |
| 8 | 05/25/2013 | 24.0 | Verified |
| 9 | 05/26/2013 | 24.0 | Verified |
| 10 | 05/27/2013 | 24.0 | Verified |
| 11 | 05/28/2013 | 24.0 | Verified |
| 12 | 05/29/2013 | 24.0 | Verified |
| 13 | 05/30/2013 | 24.0 | Verified |
| 14 | 05/31/2013 | 24.0 | Verified |
| 15 | 06/01/2013 | 24.0 | Verified |
| 16 | 06/02/2013 | 23.9 | Verified |
| 17 | 06/03/2013 | 24.0 | Verified |
| 18 | 06/04/2013 | 24.0 | Verified |
| 19 | 06/05/2013 | 24.0 | Verified |
| 20 | 06/06/2013 | 24.0 | Verified |
| 21 | 06/07/2013 | 23.9 | Verified |
| 22 | 06/08/2013 | 24.0 | Verified |
| 23 | 06/09/2013 | 24.0 | Verified |
| 24 | 06/10/2013 | 24.0 | Verified |
| 25 | 06/11/2013 | 24.0 | Verified |
| 26 | 06/12/2013 | 24.0 | Verified |
| 27 | 06/13/2013 | 24.0 | Verified |
| 28 | 06/14/2013 | 24.0 | Verified |
| 29 | 06/15/2013 | 24.0 | Verified |
| 30 | 06/16/2013 | 23.6 | Verified |

Additional log information is available and kept in the archives for 15 years after the asset has been disposed.

# EXHIBIT C

```
┌──────────────────────────────────────┐
│ USDC SDNY                             │
│ DOCUMENT                              │
│ ELECTRONICALLY FILED                  │
│ DOC #:                                │
│ DATE FILED: JUN 2 9 2012              │
└──────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

                                   :

         - v. -                :

                                   :

PETER B. MADOFF,                             :

            Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - x

MARION MADOFF,                               :
SHANA MADOFF-SWANSON,
ERIC SWANSON,                                :
█████████████████ ,
                , and    :
JENNIFER STEVENS DICKSON,
    f/k/a "Jennifer Stevens Madoff,"  :

         Interested Parties.  :

- - - - - - - - - - - - - - - - - - - - - - - - - x

STIPULATION AND ORDER

S7 10 Cr. 228 (LTS)

## Background

### The Information

    I.     Information S7 10 Cr. 228 (LTS) (the "Information"), filed June 29, 2012, charged

PETER B. MADOFF, the defendant ("MADOFF" or the "defendant"), with (1) conspiring to (a)

commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a

broker-dealer, (d) make false filings with the Securities and Exchange Commission ("SEC"), (e)

commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g)

obstruct and impede the lawful governmental function of the Internal Revenue Service; and (2)

falsifying records of an investment adviser, in connection with the multi-billion dollar fraud operated

falsifying records of an investment adviser, in connection with the multi-billion dollar fraud operated through Bernard L. Madoff Investment Securities ("BLMIS"), through on or about December 11, 2008.

II.      The Information also contains a forfeiture allegation concerning the conspiracy charged in Count One of the Information, certain of the objects of which constitute "specified unlawful activity" as that term is defined in 18 U.S.C. § 1956(c)(7) (the "SUA Conspiracy Offenses"), and which seeks criminal forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, including a money judgment in the amount of $143.1 billion, representing the amount of proceeds traceable to the commission of the SUA Conspiracy Offenses, all property constituting or derived from proceeds traceable to the commission of the said offenses, all property traceable to such property, and substitute assets, pursuant to 21 U.S.C. § 853(p).

III.     On June 29, 2012, MADOFF pleaded guilty to both counts in the Information, admitted the forfeiture allegation, and agreed to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, a sum of money equal to $143.1 billion, representing the amount of proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property (including certain more particularly identified specific property).

<u>The Preliminary Order of Forfeiture as to PETER B. MADOFF</u>

IV.     On or about June 29, 2012, the Court entered a Preliminary Order of Forfeiture (Final as to the Defendant) as to the defendant, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference as if set out in full.

V.     In the Preliminary Order, the United States of America (the "Government") represented, and the defendant conceded, that if the Government were to apply for a preliminary order of forfeiture as to the defendant, the Government could prove the following by a preponderance of the evidence:

(A)     A total money judgment in the amount of $143,100,000,000 should be imposed upon the defendant, a sum of money representing the amount of proceeds traceable to the commission of the SUA Conspiracy Offenses charged in the Information (the "Money Judgment");

(B)     Any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, whether held in his own name, in the name of his wife or other individual, either jointly or solely by such other person; any future, contingent or unperfected interest; and any claim to property based on an alleged contractual, marital, or other legal or equitable right; and all property traceable to such property (the "Forfeited Property"), has the requisite nexus to the SUA Conspiracy Offenses charged in the Information;

(C)     Based upon the foregoing, the Forfeited Property is forfeitable to the United States of America as property constituting or derived from proceeds traceable to the SUA Conspiracy Offenses charged in the Information, and property traceable to such property;

(D)     The Forfeited Property includes, but is not limited to, all right, title and interest of the defendant in the property listed in Exhibit A to the Preliminary Order (Exhibit 1(A) hereto) (the "Specific Property");

(E)     Because all the Forfeited Property could not be identified at the time of entry of the Preliminary Order, and may not be identified prior to the defendant's sentencing, the Preliminary Order may be amended when additional specific property is identified; and

3

(F)     As a result of acts and omissions of the defendant, property subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; and has been commingled with other property which cannot be divided without difficulty. The Court may therefore order the forfeiture of any other property of the defendant to the extent necessary to satisfy the Money Judgment to be imposed upon the defendant.

VI.     In the Preliminary Order, the defendant consented to the entry of orders of interlocutory sale of the Forfeited Property pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

VII.    The statutes and rules governing criminal forfeitures require publication and notice of the Preliminary Order and the Government's intent to forfeit property, and set forth the exclusive means by which a third party may petition the court for a hearing to adjudicate the validity of his or her interest in the forfeited property, in accordance with 21 U.S.C. § 853(n).

VIII.   MARION MADOFF, the wife of the defendant, would file a petition pursuant to 21 U.S.C. § 853(n) asserting an interest in the Specific Property, including, but not limited to, an ownership interest in the real property and appurtenances located at 34 Pheasant Run, Old Westbury, New York.

IX.     In consideration of the facts and circumstances of this case, including, among other factors, the readily provable facts available at the present time; in accordance with the Government's authority under 21 U.S.C. § 853(i)(2) to compromise claims arising under 21 U.S.C. § 853; and in furtherance of the intent of the Department of Justice to authorize the distribution of the net sale proceeds from the forfeited property to the victims of the fraud charged in the instant case and in *United States v. Bernard L. Madoff*, 09 Cr. 213 (DC), *United States v. David G. Friehling*, 09 Cr.

4

700 (AKH), and *United States v. Frank DiPascali*, 09 Cr. 764 (RJS), consistent with applicable

Department of Justice regulations, pursuant to 21 U.S.C. § 853(i)(1) and 28 C.F.R. Part 9, the parties

to this Stipulation and Order, the United States Attorney's Office for the Southern District of New

York (the "Office"), and MARION MADOFF, SHANA MADOFF-SWANSON, ERIC SWANSON,

██████████, ████████████, JENNIFER STEVENS DICKSON, f/k/a "Jennifer

Stevens Madoff," and any entities controlled by them, in whole or in part (together, "the

MADOFFS") have determined to resolve without litigation the MADOFFS' potential claims to the

property subject to forfeiture under the Preliminary Order of Forfeiture entered against the

defendant.

THEREFORE, THE OFFICE AND THE MADOFFS HEREBY STIPULATE AND AGREE

as follows:

1.      Subject to the provisions of paragraphs 4 and 5 below, the MADOFFS withdraw and

relinquish any claim under the U.S. asset forfeiture laws that they have or may have, on any legal,

factual or other basis, in any manner or forum, to the Forfeited Property as defined in the Preliminary

Order of Forfeiture entered against the defendant — that is, any and all property and other interests

belonging to, owed to or controlled in whole or in part by the defendant, whether held in his own

name, in the name of any of the MADOFFS, or other individual, either jointly or solely by such other

person; any future, contingent or unperfected interest; and any claim to property based on an alleged

contractual, marital, or other legal or equitable right; and all property traceable to such property —

including, but not limited to, the Specific Property.  The MADOFFS further consents to the

administrative and/or civil forfeiture of the Specific Property pursuant to 18 U.S.C. § 981(a)(1)(A).

2.      Subject to the provisions of paragraph 4 below, the MADOFFS agree that they will not object to the entry of the Preliminary Order of Forfeiture or file a petition in an ancillary proceeding as to the Forfeited Property; file a claim, statement of interest or petition (including but not limited to a petition for remission or mitigation); or otherwise contest the administrative or judicial forfeiture of the Forfeited Property in any proceeding under the U.S. asset forfeiture laws, nor will they assist a third party in doing so, including any relatives (by blood or marriage and of any degree) of the defendant and/or the MADOFFS.

3.      Subject to the provisions of paragraph 4 below, the MADOFFS consent to the entry of orders of interlocutory sale of the Forfeited Property pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

4.      In compromise of claims the MADOFFS would have pursued with regard to the property forfeitable as a result of the offenses to which PETER B. MADOFF has pleaded guilty, the Office will not contest MARION MADOFF's claim to a sum of money equal to $1,440,000 (the "Funds"), in accordance with and subject to the following terms:

(a)     On or before the tenth business day following the Parties' execution of this Stipulation, PETER B. MADOFF and the MADOFFS shall take appropriate steps to cause all liquid assets comprising the Specific Property set forth at paragraphs 8(a)-8(k) of Exhibit 1(A) to be transferred into the IOLA account of Lankler Siffert & Wohl LLP (the "Escrow Account"), attorneys for MARION MADOFF.

(b)     Within three business days thereof, Lankler Siffert & Wohl LLP shall: (i) transfer $100,000 to MARION MADOFF, pursuant to her instructions; (ii) hold approximately $671,733.23 (the "Balance," as more precisely defined below) in the Escrow Account; (iii) transfer $90,000 into a new, interest bearing account (the "Property Maintenance Account") to be opened by MARION MADOFF to be utilized solely to pay the costs and expenses of maintaining the New York Homes in accordance with the terms of paragraph

6

4(c), below; and (iv) to transfer the remainder of the funds in the Escrow Account (approximately $10,210,299.56), to the United States Marshals Service Seized Assets Deposit Account, pursuant to instructions to be provided by the Office.

(c)    MARION MADOFF shall use her best efforts to expeditiously sell the real property located at 34 Pheasant Run, Old Westbury, New York (the "Old Westbury Property") and the cooperative apartment known as 975 Park Avenue, Apartment 6B, New York, New York (the "New York City Coop," and together with the Old Westbury Property, the "New York Homes"), provided, however, that (a) the terms of such sales, including the sales prices and the identities of the buyer, shall be subject to the prior approval of the Office, and (b) the proceeds of any such sale shall be immediately transferred, upon closing, to the United States Marshals Service Seized Assets Deposit Account, pursuant to instruction to be provided by the Office.

Pending such sale of the New York Homes, MARION MADOFF is authorized and directed to make periodic disbursements from the Property Maintenance Account to pay legitimate, necessary, and reasonable expenses necessary to maintain and preserve the New York Homes, including but not limited to mortgage and loan payments, common charges, assessments, insurance premiums, and necessary maintenance. MARION MADOFF shall provide the Office with a list of such expenses on a monthly basis, no more than two weeks after the end of the month, and shall maintain records reflecting such expenses, which shall be made available to the Office upon request. Except as set forth in this paragraph, MARION MADOFF is not authorized to make any withdrawals, in any form, from the Property Maintenance Account.

If the New York Homes are not in contract to be sold on or before January 29, 2013, the United States Marshals Service ("USMS"), in its sole discretion is authorized to require MARION MADOFF to transfer the Old Westbury Property and/or the New York Coop to its custody for sale by the USMS. For the avoidance of doubt, once either or both of the New York Homes are transferred to the custody of the USMS, MARION MADOFF shall not be responsible for their continued maintenance.

(d)    Within three business days of the closing of the sale of the Old Westbury Property and the New York Coop, whichever is later, or the transfer any unsold New York Homes to the custody of the USMS, Lanker, Siffert & Wohl LLP shall transfer the Balance to MARION MADOFF.  The Balance is defined as the Funds, less:

7

i.     Approximately $68,971.77, reflecting expenditures made in the period beginning October 2011, and ending the day of the parties' execution of this Stipulation;

ii.    $300,000 in legal representation fees earned, but not paid, prior to October 2011;

iv.    $127,295, in lieu of the forfeiture of property previously transferred for the benefit of ███████████████;

v.     $60,000 in lieu of the forfeiture of property previously transferred for the benefit of Harvey W. Nelson;

vi.    $100,000 in lieu of the forfeiture of property previously transferred for the benefit of Seymour Cohen;

vii.   $12,000 in lieu of the forfeiture of property previously transferred for the benefit of Howard Schwartzberg;

vii.   $100,000 previously transferred to MARION MADOFF pursuant to paragraph 4(b)(i), above; and

viii.  Such additional amount in the event that the Office and MARION MADOFF agree upon a sum for the repurchase of miscellaneous personal effects.

Accordingly, the net amount to be released to MARION MADOFF pursuant to paragraph 4 of this Stipulation and Order is approximately $671,733.23.

(e)    Within three business days of the closing of the sale of the Old Westbury Property and the New York Coop, whichever is later, or the transfer of either or both of the New York Homes to the custody of the USMS, MARION MADOFF shall transfer the remainder of the funds in the Property Maintenance Account, including accrued interest, to the United States Marshals Service Seized Assets Deposit Account, pursuant to instruction to be provided by the Office

(f)    MARION MADOFF understands and agrees that the Office does not have custody of the monies to be released to MARION MADOFF pursuant to this paragraph 4 and that the Office cannot dictate or control when any requests for the release of funds will be acted upon by third party custodians.

8

5.     The MADOFFS understand and agree that this Stipulation and Order binds only the Office and does not in any way preclude any other department or agency of the United States or any other person or entity, including, but not limited to, the United States Securities and Exchange Commission, the Internal Revenue Service, Irving H. Picard, Esq. as trustee for the liquidation of the business of defendant Bernard L. Madoff Investment Securities LLC, or the Securities Investor Protection Corporation, from seeking to recover the Funds, or any portion thereof, from the MADOFFS.

6.     The MADOFFS understand and agree that the Preliminary Order authorizes the USMS to take possession of the Specific Property and to hold such property in its secure custody and control, except to the extent that any Order of the Court may explicitly provide otherwise. For the avoidance of doubt, the New York Homes shall be disposed in accordance with paragraph 4, above.

7.     Pursuant to 21 U.S.C. § 853(g) and Rule 32.2(b)(3), PETER B. MADOFF, the MADOFFS, their attorneys, agents, and other family members, and anyone acting on his or her behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of this Order, including financial institutions and other custodians:

(a)     shall not directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the Specific Property;

(b)     shall not use or permit the Specific Property to be used for any illegal activity; and

    (c)    shall not take any action that would depreciate, damage, or in any way diminish the value of the Specific Property without the prior written consent of the Office.

8.    It is understood that the Office reserves the right to void this agreement and to recover money or property from the applicable MADOFF(S), including the Funds or property traceable to the Funds, together with interest and such further relief as the Court may deem just and proper, in the event the Office determines that any of the MADOFFS, or any of their children or grandchildren have failed to fully and truthfully disclose all financial information requested by the Office, the USMS, or the Federal Bureau of Investigation ("FBI"); have failed to disclose any material information about their finances or financial condition; have failed to fully comply with the terms and conditions of the Preliminary Order, this Stipulation and Order, or any orders of interlocutory sale that have or may be entered concerning the Specific Property; or have aided or assisted another in thwarting, delaying or otherwise interfering with the ability of the Office, the USMS or the FBI, their agents and employees, from effecting the terms of the Preliminary Order, this Stipulation and Order, or any orders of interlocutory sale that have or may be entered concerning the Specific Property.

9.    The MADOFFS will take all necessary steps to pass clear title to the Specific Property to the United States, its agent or designee, including, but not limited to, the execution of all documentation necessary to effect the forfeiture or transfer of the Specific Property as may be directed by the United States, its agent or designee.

10.    The MADOFFS represent that they are aware of no one, other than the defendant, themselves, and any financial institutions, persons, or entities that may hold a mortgage or lien on the real property included in Exhibit 1(A), who might have or might assert a property interest in the Specific Property.

11.     The Office shall have the sole discretion to appoint or seek judicial or other approval of manager(s) for the Specific Property.

12.     The MADOFFS further understand and agree that, notwithstanding the foregoing, if any of the Specific Property, as a result of any act or omission of the defendant or the MADOFFS, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the Office will seek an order of forfeiture or will pursue collection by any other remedy available at law of a corresponding portion of the Funds or property traceable to such property as substitute property.  The MADOFFS specifically consent to the Office's right, upon demand and refusal, to pursue the remedy described in this paragraph, and will not argue, in any such proceeding, that such a remedy is available to the Government only against criminal defendants and may not be used to enforce the terms of this Stipulation and Order.

13.     The MADOFFS understand, as set forth in paragraphs 2, 16 and 17 of the Preliminary Order of Forfeiture, that the Court, as to PETER B. MADOFF, has ordered the forfeiture, as property constituting or derived from proceeds traceable to the commission of the offense of conspiracy to commit offenses constituting specified unlawful activity, as that term is defined in 18 U.S.C. § 1956(c)(7), and property traceable to such property, of any and all property and other interests belonging to, owed to or controlled in whole or in part by PETER B. MADOFF, and all property traceable to such property (excluding the Substitute Assets), including not only the Specific Property but also any and all property or other interests in which PETER B. MADOFF has or will acquire an interest (excluding the Substitute Assets), regardless of whether such property or interests are extant or specifically identified in the Preliminary Order of Forfeiture or this Stipulation and Order, or known

11

to the Government or the defendant at the time of the entry of the Preliminary Order of Forfeiture or

the final order of forfeiture to be entered against the defendant. Subject to the provisions of paragraph 4

of this Stipulation and Order, above, the MADOFFS understand and agree to be bound, for all purposes

under the U.S. asset forfeiture laws, by the terms of paragraphs 2, 15, 16, and 17 of the Preliminary

Order of Forfeiture as to PETER B. MADOFF not only with respect to the Specific Property but also

with respect to any and all property and other interests belonging to, owed to or controlled in whole

or in part by PETER B. MADOFF and/or MARION MADOFF, and any and all property or other

interests in which PETER B. MADOFF and/or MARION MADOFF may have or have, individually

or jointly, an interest, regardless of whether such property or interests are extant or known to the

Government, the defendant or MARION MADOFF at the time of the entry of the Preliminary Order

of Forfeiture or this Stipulation and Order, and that the intent of this Stipulation and Order is to divest

MARION MADOFF of, and to forfeit to the United States of America, any and all property and other

interests belonging to, owed to or controlled in whole or in part by MARION MADOFF, and all

property traceable to such property (subject to the terms of paragraphs 4 and 5 above). The MADOFFS

understand and agree that they are hereby barred from challenging, or assisting a third party in

challenging, the forfeiture of any such property pursuant to U.S. asset forfeiture laws, at any time, in

any manner or forum. The MADOFFS further understand and agree that, subject to the terms of

paragraph 4 above, they are giving up on a final basis any and all claims under the U.S. asset forfeiture

laws to any and all property and other interests belonging to, owed to or controlled in whole or in

part by PETER B. MADOFF, and all property traceable to such property, including not only the

Specific Property but also any and all property or other interests in which PETER B. MADOFF has

or may acquire an interest, it being understood that in compromise of claims MARION MADOFF

would have pursued, she will receive a sum of money in compromise of her potential claims as set forth

12

in paragraph 4 of this Stipulation and Order; and that the MADOFFS are precluded from retaining or seeking to retain or recover any other such property, including, but not limited to, any award of attorneys fees or interest in connection with the above-captioned case and any related proceedings that may be brought under the U.S. asset forfeiture laws to effectuate the terms of this Stipulation and Order.

14.     The MADOFFS are hereby barred from asserting any claim against the United States or any of its agents and employees, including, but not limited to, the FBI, the USMS, and the Office, in connection with, or arising out of, the United States' seizure or forfeiture of the Specific Property or the transfer of the Specific Property to the United States, its agents and designees, including, for the avoidance of doubt, any claim for costs or attorneys' fees.

15.     The MADOFFS represent that they have been represented in connection with the matters contained in this Stipulation and Order by counsel of their choice, that they are satisfied with the representation they have received, and that they are entering into this Stipulation and Order of their own free will.

16.     The MADOFFS and their undersigned counsel acknowledge that they have fully discussed and understand every paragraph and clause in this Stipulation and Order and the consequences thereof.

17.     Notwithstanding anything to the contrary herein, this Stipulation and Order is expressly subject to and contingent upon approval of the Court.  If this Stipulation and Order, or any portion thereof, is not approved by the Court, this Stipulation shall be null and void and have no further force or effect, and, in such event, neither this Stipulation nor any negotiations or writings in connection herewith shall in any way be construed or deemed to be evidence of an admission on behalf of any Party hereto regarding any claim or right that such Party may have.

13

18.     This Stipulation and Order may be executed in counterparts (including by facsimile or electronically), each of which will be deemed an original, and all of which, when taken together, will be deemed the complete agreement.

19.     The Court will have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order.

20.     This Stipulation and Order constitutes the complete agreement between the Parties and may not be amended except by written consent of the Parties and order of the Court, except that Exhibit 1(A) and 1(A)(I) may, for purposes of this agreement, be amended solely upon written consent of the Parties.

**SO ORDERED.**

Dated: June 24, 2012
        New York, New York

_____
HON. LAURA TAYLOR SWAIN
United States District Judge
Southern District of New York

14

**AGREED TO BY:**

Dated: New York, New York
     June 29, 2012

PREET BHARARA
United States Attorney

By: _____
MATTHEW L. SCHWARTZ
Assistant United States Attorney
1 Saint Andrew's Plaza
New York, New York 10007

Dated: New York, New York
     June 29, 2012

Lankler Siffert & Wohl LLP
*Attorneys for Peter B. Madoff and Marion Madoff*

_____
John R. Wing, Esq.
Charles Spada, Esq.
500 Fifth Avenue
New York, New York 10110

Dated: New York, New York
     June ___, 2012

Bingham McCutchen LLP
*Attorneys for Shana Madoff-Swanson, Eric Swanson,* ████████, ████████

_____
Michael D. Wolk, Esq.
2020 K Street, N.W.
Washington, D.C. 20006

Dated: New York, New York
     June ___, 2012

Morvillo LLP
*Attorneys for Jennifer Stevens Dickson*

_____
Henry Putzel, III, Esq.
1 World Financial Center
New York, New York 10271

AGREED TO BY:

Dated: New York, New York              PREET BHARARA
       June __, 2012                   United States Attorney


                              By:     _____
                                      MATTHEW L. SCHWARTZ
                                      Assistant United States Attorney
                                      1 Saint Andrew's Plaza
                                      New York, New York 10007

Dated: New York, New York              Lankler Siffert & Wohl LLP
       June __, 2012                   *Attorneys for Peter B. Madoff and Marion
                                       Madoff*


                                      _____
                                      John R. Wing, Esq.
                                      Charles Spada, Esq.
                                      500 Fifth Avenue
                                      New York, New York 10110

Dated: New York, New York              Bingham McCutchen LLP
       June __, 2012                   *Attorneys for Shana Madoff-Swanson, Eric
                                       Swanson,* ███████████, ███████

                                      _____
                                      Michael D. Wolk, Esq.
                                      2020 K Street, N.W.
                                      Washington, D.C. 20006

Dated: New York, New York              Morvillo LLP
       June __, 2012                   *Attorneys for Jennifer Stevens Dickson*


                                      _____
                                      Henry Putzel, III, Esq.
                                      1 World Financial Center
                                      New York, New York 10271


15

**AGREED TO BY:**

Dated: New York, New York          PREET BHARARA
       June __, 2012               United States Attorney

By: _____

                           MATTHEW L. SCHWARTZ
                           Assistant United States Attorney
                           1 Saint Andrew's Plaza
                           New York, New York 10007

Dated: New York, New York          Lankler Siffert & Wohl LLP
       June __, 2012               *Attorneys for Peter B. Madoff and Marion*
                           *Madoff*

                           _____
                           John R. Wing, Esq.
                           Charles Spada, Esq.
                           500 Fifth Avenue
                           New York, New York 10110

Dated: New York, New York          Bingham McCutchen LLP
       June __, 2012               *Attorneys for Shana Madoff-Swanson, Eric*
                           *Swanson, Rebecca Skoller, Rakel Swanson*

                           _____
                           Michael D. Wolk, Esq.
                           2020 K Street, N.W.
                           Washington, D.C. 20006

Dated: New York, New York          Morvillo LLP
       June 2__, 2012             *Attorneys for Jennifer Stevens Dickson*

                           *Henry Putzel III* _____
                           Henry Putzel, III, Esq.
                           1 World Financial Center
                           New York, New York 10271

15

**AGREED TO BY:**

Dated: New York, New York
     June ___, 2012

_____
PETER B. MADOFF

Dated: New York, New York
     June ___, 2012

_____
MARION MADOFF

Dated: New York, New York
     June ___, 2012

_____
SHANA MADOFF-SWANSON,
*individually, and on behalf of* ███████
*and* ███████, *minors*

Dated: New York, New York
     June ___, 2012

_____
ERIC SWANSON, *individually, and on
behalf of* ███████ *and* ███
███, *minors*

Dated: New York, New York
     June ___, 2012

_____
JENNIFER STEVENS DICKSON,
*individually, and in her capacity as executrix
of the Estate of Roger Madoff*

16

**AGREED TO BY:**

Dated: New York, New York
      June __, 2012

                                  PETER B. MADOFF

Dated: New York, New York
      June __, 2012

                                  MARION MADOFF

Dated: New York, New York
      June __, 2012

                                  SHANA MADOFF-SWANSON,
*individually, and on behalf of* ▮▮▮▮▮▮▮▮▮▮▮
*and* ▮▮▮▮▮▮▮▮▮▮ *minors*

Dated: New York, New York
      June __, 2012

                                  ERIC SWANSON, *individually, and on
behalf of* ▮▮▮▮▮▮▮▮▮ *and* ▮▮▮▮▮▮
▮▮▮▮▮▮▮ *minors*

Dated: New York, New York
      June __, 2012

                                  JENNIFER STEVENS DICKSON,
*individually, and in her capacity as executrix
of the Estate of Roger Madoff*

16

**AGREED TO BY:**

Dated:  New York, New York
       June __, 2012

_____
PETER B. MADOFF

Dated:  New York, New York
       June __, 2012

_____
MARION MADOFF

Dated:  New York, New York
       June __, 2012

_____
SHANA MADOFF-SWANSON,
*individually, and on behalf of*
*and* ▮▮▮▮▮▮▮, *minors*

Dated:  New York, New York
       June 29, 2012

_____
ERIC SWANSON, *individually, and on*
*behalf of* ▮▮▮▮▮ *and*
▮▮▮▮▮, *minors*

Dated:  New York, New York
       June __, 2012

_____
JENNIFER STEVENS DICKSON,
*individually, and in her capacity as executrix*
*of the Estate of Roger Madoff*

16

**AGREED TO BY:**

Dated: New York, New York
     June __, 2012

_____
PETER B. MADOFF

Dated: New York, New York
     June __, 2012

_____
MARION MADOFF

Dated: New York, New York
     June __, 2012

_____
SHANA MADOFF-SWANSON,
*individually, and on behalf of* ▮▮▮▮▮
*and* ▮▮▮▮▮▮▮ *minors*

Dated: New York, New York
     June __, 2012

_____
ERIC SWANSON, *individually, and on
behalf of* ▮▮▮▮▮▮▮ *and* ▮▮▮▮▮
▮▮▮▮▮ *minors*

Dated: New York, New York
     June 27, 2012

_____
JENNIFER STEVENS DICKSON,
*individually, and in her capacity as executrix
of the Estate of Roger Madoff*

16

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA    :

     :      PRELIMINARY ORDER
      - v. -      :      OF FORFEITURE
     :      (FINAL AS TO THE DEFENDANT)

     :      S7 10 Cr. 228 (LTS)

PETER B. MADOFF,      :

        Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## Background

I.      Information S7 10 Cr. 228 (LTS) (the "Information"), filed June 29, 2012, charged

PETER B. MADOFF, the defendant ("MADOFF" or the "defendant"), with (1) conspiring to (a)

commit securities fraud, (b) falsify records of an investment adviser, (c) falsify records of a

broker-dealer, (d) make false filings with the Securities and Exchange Commission ("SEC"), (e)

commit mail fraud, (f) falsify statements in relation to documents required by ERISA, and (g)

obstruct and impede the lawful governmental function of the Internal Revenue Service; and (2)

falsifying records of an investment adviser, in connection with the multi-billion dollar fraud operated

through Bernard L. Madoff Investment Securities ("BLMIS"), from at least approximately the early

to mid-1970s through on or about December 11, 2008.

II.      The Information also contains a forfeiture allegation concerning the conspiracy

charged Count One of the Information, certain of the objects of which constitute "specified unlawful

activity" as that term is defined in 18 U.S.C. § 1956(c)(7) (the "SUA Conspiracy Offenses"), and

which seeks criminal forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all

property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy

Offenses, including a money judgment in the amount of $143.1 billion, representing the amount of

proceeds traceable to the commission of the SUA Conspiracy Offenses, all property constituting or

derived from proceeds traceable to the commission of the said offenses, all property traceable to

such property, and substitute assets, pursuant to 21 U.S.C. § 853(p).

III.    On June 29, 2012, MADOFF pleaded guilty to both counts in the Information,

admitted the forfeiture allegation, and agreed to forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, a sum of money equal to $143.1 billion, representing the

amount of proceeds traceable to the commission of the SUA Conspiracy Offenses, and property

traceable to such property (including certain more particularly identified specific property).

IV.    The defendant having pleaded guilty to counts as to which the Government is seeking

the penalty of criminal forfeiture, and the Court having accepted the defendant's plea and admission

to forfeiture, entry of a preliminary order of forfeiture is appropriate pursuant to Rule 32.2(b) of the

Federal Rules of Criminal Procedure.

## Property Subject To Forfeiture

### Money Judgment

V.    The Government represents, and the defendant concedes, that if the Government were

to apply for an order imposing a personal money judgment upon the defendant, the Government

could prove by a preponderance of the evidence that the defendant is liable for a personal money

judgment in the amount of $143.1 billion, a sum of money representing the amount of property

constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses,

and property traceable to such property, as alleged in the Information's forfeiture allegation.

VI.    Accordingly, the Government and the defendant agree that a total money judgment in the amount of $143,100,00,000 should be imposed upon the defendant.

Specific Property

VII.    The Government represents, and the defendant concedes, that if the Government were to apply for an order of criminal forfeiture as to specific property, the Government could prove the following by a preponderance of the evidence:

(1)    Any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, whether held in his own name, in the name of his wife or other individual, either jointly or solely by such other person; any future, contingent or unperfected interest; and any claim to property based on an alleged contractual, marital, or other legal or equitable right; and all property traceable to such property (the "Forfeited Property"), has the requisite nexus to the SUA Conspiracy Offenses.

(2)    Based upon the foregoing, the Forfeited Property is forfeitable to the United States of America as property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property.

(3)    The Forfeited Property includes, but is not limited to, all right, title and interest of the defendant in the property listed in Exhibit A to this Order (the "Specific Property").

(4)    Because all the Forfeited Property cannot be identified at this time, and may not be identified prior to sentencing, the preliminary order of forfeiture may be amended when additional specific property is identified, pursuant to Rule 32.2(b)(2)(C) of the Federal Rules of Criminal Procedure.

(5)    Based upon the foregoing, the defendant agrees that he will not file a claim, statement of interest or petition (including but not limited to a petition for remission or mitigation) or otherwise contest any forfeiture proceeding involving the Specific Property on any ground, and will not cause or assist anyone else in doing so.

(6)    The Defendant further consents to the administrative and/or civil forfeiture of the Specific Property pursuant to 18 U.S.C. § 981(a)(1)(A).

3

Substitute Assets Provision

VIII.   The Government represents, and the defendant concedes, that as a result of acts and omissions of the defendant, property subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; and has been commingled with other property which cannot be divided without difficulty.  Pursuant to 21 U.S.C. § 853(p), incorporated by 28 U.S.C. § 2461(c), the Court may therefore order the forfeiture of any other property of the defendant to the extent necessary to satisfy the money judgment to be imposed upon the defendant.

Miscellaneous Provisions

IX.   The defendant consents to the entry of orders of interlocutory sale of the Forfeited Property pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

X.   In the event the United States obtains a final order of forfeiture as to the Forfeited Property, the Department of Justice will authorize the distribution of the net sale proceeds to the victims of the fraud charged in the instant case and in *United States v. Bernard L. Madoff*, 09 Cr. 213 (DC), *United States v. David G. Friehling*, 09 Cr. 700 (AKH), and *United States v. Frank DiPascali*, 09 Cr. 764 (RJS), consistent with applicable Department of Justice regulations, pursuant to 21 U.S.C. § 853(i)(1) and 28 C.F.R. Part 9.

4

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, and Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, and based on the foregoing, the Court finds by a preponderance of the evidence that the defendant is liable for a personal money judgment in the amount of $143.1 billion, a sum of money representing the amount of property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses, and property traceable to such property. Accordingly, the defendant is liable for a total money judgment in the amount of $143,100,000,000 (the "Money Judgment").

2.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, and Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, and based on the foregoing, any and all property and other interests belonging to, owed to, or controlled in whole or in part by the defendant, whether held in his own name, in the name of his wife or other individual, either jointly or solely by such other person; any future, contingent or unperfected interest; and any claim to property based on an alleged contractual, marital, or other legal or equitable right; and all property traceable to such property (the "Forfeited Property"), has the requisite nexus to the offenses giving rise to the forfeiture charged in the Information, and is therefore forfeitable and is hereby forfeited to the United States of America as property constituting or derived from proceeds traceable to the commission of the SUA Conspiracy Offenses.

3.      The Forfeited Property includes, but is not limited to, all right, title and interest of the defendant in the Specific Property, and the same is hereby forfeited to the United States for disposition in accordance with law, subject to the provisions of 21 U.S.C. § 853(n)(1) and 18 U.S.C. § 982(b)(1).

5

4.      The defendant having consented to the entry of orders of interlocutory sale of the Specific Property, upon application of the Government and pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Court will enter orders of interlocutory sale in order to preserve and maximize the value of the Specific Property pending entry of a final order of forfeiture.

5.      The net proceeds from the sale of the Forfeited Property shall be applied to the Money Judgment, in partial satisfaction thereof.

6.      Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States Marshals Service ("USMS") is hereby authorized to:

    (a)   take possession of the Specific Property and to hold such property in its secure custody and control, provided, however, that the USMS shall not take immediate possession of the real property located at (i) 34 Pheasant Run, Old Westbury, New York, and (ii) 975 Park Avenue, Apartment 6B, New York, New York, both of which shall be marketed for sale by the defendant's wife (and maintained at her expense) pursuant to the terms of a separate Stipulation and Order between her and the United States Attorney's Office for the Southern District of New York (the "Office");

    (b)   maintain existing insurance policies and, to the best of its ability, renew any other insurance policies, that the USMS, in its sole discretion, determines to be necessary to preserve the value of the Specific Property pending sale; and

    (c)   solicit from among a limited number of vendors to assist in the preservation or maintenance of Specific Property pending sale and the disposal of such personal property.

7.      The United States may, in its sole discretion, reject any offer to purchase the Specific Property where it determines that the offer is being made by, or on behalf of, a person involved in the criminal activity alleged as the basis for forfeiture, or who contributed to or benefitted from the offense underlying the forfeiture.

6

8.     Pursuant to 21 U.S.C. § 853(g) and Rule 32.2(b)(3), the defendant, his attorneys, agents, spouse, and other family members, and anyone acting on his behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of this Order, including financial institutions and other custodians:

(a)     shall not directly or indirectly, transfer, sell, assign, pledge, distribute, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, hypothecated, encumbered, or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the Specific Property;

(b)     shall not use or permit the Specific Property to be used for any illegal activity; and

(c)     shall not take any action that would depreciate, damage, or in any way diminish the value of the Specific Property without the prior written consent of the Office.

9.     Pursuant to Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, the United States shall publish notice of this Order for at least thirty (30) consecutive days on the government internet site www.forfeiture.gov.  The United States shall also send notice of this Order to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

10.     Any person, other than the defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of notice on the government internet site, or no later than thirty-five (35) days from the mailing of direct notice, whichever is earlier, pursuant to Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

11.     The notice of forfeiture must describe the forfeited property, state the times by which a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition. The notice shall also state that the petition (i) shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the nature and extent of the petitioner's right, title or interest in the Specific Property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property, any additional facts supporting the petitioner's claim, and the relief sought, pursuant to 21 U.S.C. § 853(n).

12.     Upon adjudication of all third-party interests, this Court will enter a final order of forfeiture pursuant to 21 U.S.C. § 853(n) incorporated by 28 U.S.C. § 2461(c), in which all interests will be addressed.

13.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, this Order of Forfeiture shall be final against the defendant PETER B. MADOFF, shall be made part of the sentence of the defendant PETER B. MADOFF, and shall be included in the judgment of conviction therewith.

14.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture, the Office is authorized to conduct any discovery needed to identify, locate, or dispose of property subject to forfeiture, including depositions, interrogatories, requests for production of documents and subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

8

15.     As the statutory criteria for the forfeiture of substitute property have been satisfied, pursuant to 21 U.S.C. § 853(p), in the event the Government locates any other property of the defendant up to the value of the Forfeited Property, and that may be necessary to satisfy the Money Judgments, all right, title and interest of the defendant in such property is forfeitable as substitute property pursuant to 21 U.S.C. § 853(p).   Accordingly, pursuant to Rule 32.2(e), on the Government's motion, the Court may at any time enter an order of forfeiture of such substitute property.

16.     As the defendant has stipulated and the Court has found that the property subject to forfeiture includes any and all property and other interests belonging to, owed to or controlled in whole or in part by the defendant, and is not limited to the Specific Property, pursuant to Rule 32.2(b)(2)(C), this Order will be amended pursuant to Rule 32.2(e)(1) on the Government's application for an amended order as to additional specific property not identified in Exhibit A hereto.

17.     In executing upon this order of forfeiture, the Government may use all remedies available to it pursuant to 21 U.S.C. § 853 and any other applicable federal law.  If no such federal law exists, the Government may use all remedies available to it pursuant to applicable state law.

18.     All payments on the Money Judgment will be made by Postal money order, bank or certified check, payable, in this instance, to the "United States Marshals Service," and will bear the case name and number and be delivered to the United States Attorney's Office, Southern District of New York, Attn: Asset Forfeiture Unit, One St. Andrews Plaza, New York, New York 10007, or may be wired to the USMS pursuant to instructions to be provided by the Office.

19.     The Court retains jurisdiction to take additional action, enter further orders, and amend this and any future orders as necessary to implement and enforce this Order.

9

20.     The Clerk of the Court shall forward four certified copies of this order to Assistant

U.S. Attorney Matthew L. Schwartz, One St. Andrews Plaza, New York, New York, 10007.

**AGREED TO BY:**

Dated: New York, New York              PREET BHARARA
      June \_\_, 2012                      United States Attorney

                          By:     _____
                                MATTHEW L. SCHWARTZ
                                Assistant United States Attorney
                                1 Saint Andrew's Plaza
                                New York, New York 10007

Dated: New York, New York
      June \_\_, 2012                      _____
                                PETER B. MADOFF
                                Defendant

Dated: New York, New York              Lankler Siffert & Wohl
      June \_\_, 2012                      *Attorneys for Peter B. Madoff*

                                _____
                                John R. Wing, Esq.
                                Charles Spada, Esq.
                                500 Fifth Avenue
                                New York, New York 10110

**SO ORDERED.**

Dated: June 29, 2012
       New York, New York

                                _____
                            HON. LAURA TAYLOR SWAIN
                            United States District Judge
                            Southern District of New York

## EXHIBIT A

1.  The real property and appurtenances known as 34 Pheasant Run, Old Westbury, New York, together with its appurtenances, improvements, and fixtures (indoor and outdoor).

2.  The cooperative apartment known as 975 Park Avenue, Apartment 6B, New York, New York, including any and all shares of capital stock and/or the related proprietary lease, together with its appurtenances, improvements, and fixtures (indoor and outdoor), as well as any associated storage units, parking spaces, or maid's units.

3   All valuable, insured or readily salable personal property (including indoor and outdoor appliances, electronics, fixtures and furnishings) located at 34 Pheasant Run, Old Westbury, New York, but not including the items set forth on Schedule I annexed hereto.

4.  All valuable, insured or readily salable personal property (including indoor and outdoor appliances, electronics, fixtures and furnishings) located at 975 Park Avenue, Apartment 6B, New York, New York, including the contents of any and all basement storage units, but not including the items set forth on Schedule I annexed hereto.

5.  One 1995 Ferrari 355 Spyder, located at 34 Pheasant Run, Old Westbury, New York, together with its fixtures, electronics, equipment, parts and accessories.

6.  One 1958 Aston Martin, transferred to Irving H. Picard, in his capacity as the Trustee for the liquidation proceedings under the Securities Investor Protection Act of Bernard L. Madoff Investment Securities LLC, in or about May 2011.

7.  Any and all jewelry and watches in the possession of Peter B. Madoff, Marion Madoff, and/or Shana Madoff-Swanson, including one Rolex watch, but not including the items set forth on Schedule I annexed hereto.

8.  All funds and other property on deposit in any and all financial institution accounts held in the name(s) or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff-Swanson, and/or Roger Madoff, and any accounts to which said funds have been transferred, and all funds traceable thereto, including but not limited to:

    a.  Approximately $5,434,293.57, representing proceeds from the sale of 200 Algoma Road, Palm Beach, Florida, held in account No. ████9977 at Fidelity Investments.

b.    Approximately $2,257,047, representing proceeds from the sale of 8 Barclay Court, East Hampton, New York, held in escrow by George Biono, Esq., Biondo & Hammer LLP, 50 The Plaza, Montauk, New York 11954.

c.    Approximately $2,376,576.58, representing proceeds from the sale of 1 Morton Square, Unit 5DW, New York, New York, transferred to Irving H. Picard, in his capacity as the Trustee for the liquidation proceedings under the Securities Investor Protection Act of Bernard L. Madoff Investment Securities LLC, on or about December 3, 2010.

d.    All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at TD Bank, including, but not limited to:

    i.    Account No. ███ 4400, in the name of Peter and/or Marion Madoff (approximately $100);

    ii.    Account No. ███ 4591, in the name of Peter and/or Marion Madoff (approximately $1,634.76);

    iii.    Checking account No. ███ 6472, in the name of Shana D. Swanson (approximately $400,000);

e.    All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at JPMorgan Chase Bank, including, but not limited to:

    i    IRA account No. ███ 0575, in the name of Marion Madoff (approximately $112,250);

    ii.    Account No. ███ 9654, in the name of Marion Madoff (approximately $0);

    iii.    Account No. ███ 0754, in the name of Marion Madoff (approximately $433,641.16);

    iv.    IRA Account No. ███ 0576, in the name of Peter Madoff (approximately $0.85);

    v.    Account No. ███ 3163, in the name of ███ Trust, Shana D. Skoller, Trustee (approximately $132,813);

f.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Credit Suisse Securities (USA), including, but not limited to:

   i.   Managed account No. ███4620, in the name of Madoff Family LLC (approximately $190,496).

   ii.   Managed account No. ███1927, in the name of Madoff Family LLC (approximately $403,662).

   iii.   Managed account No. ███3618, in the name of Madoff Family LLC (approximately $43.21).

   iv.   Managed account No. ███2438, in the name of Shana Madoff (approximately $456,999).

g.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Fidelity, including, but not limited to:

   i.   Account No. ███9663, in the name of Peter and/or Marion Madoff (approximately $293,083.24);

   ii.   Account No. ███2873, in the name of Peter and/or Marion Madoff (approximately $212,318.66)

   iii.   Account No. ███9977, in the name of Peter and/or Marion Madoff (approximately $5,434,293.57);

   iv.   Account No. ███6034, in the name of Peter Madoff (approximately $39,401.04);

   v.   Account No. ███6255, in the name of Peter and Marion Madoff (approximately $10,019.31);

   vi.   Account No. ███5779, in the name of Marion Madoff (approximately $236,915.25);

   vii.   Account No. ███3345, in the name of Shana Madoff (approximately $240,734.42);

Exhibit A, Page iii of ix

h.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at Sovereign Bank, including, but not limited to:

  i.   Account No. ███ 1055, in the name of Shana Diane Madoff-Swanson, ████████ UTMA (approximately $0).

i.   All funds, financial instruments, securities, cash, and other property on deposit in any and all accounts held at HSBC, including, but not limited to:

  i.   Account No. ███ 5351, in the name of Peter and Marion Madoff (approximately $0);

  ii.   Account No. ███ 6812, in the name of Peter and Marion Madoff (approximately $0);

  iii.   Account No. ███ 2483, in the name of Peter and Marion Madoff (approximately $0);

  iv.   Account No. ███ 3278, in the name of Peter B. Madoff (approximately $0);

  v.   Account No. ███ 5343, in the name of Peter B.  Madoff (approximately $0);

  vi.   Account No. ███ 6120, in the name of Peter B. Madoff (approximately $0);

  vii.   Account No. ███ 2751, in the name of Peter and/or Marion Madoff (approximately $0);

  viii.   IRA Account No. ███ 1126, in the name of Peter and/or Marion Madoff (approximately $0);

  ix.   Account No. ███ 328-6, in the name of Essex Realty Development LLC (approximately $5,000);

j.   The following securities held by or for Peter B. Madoff, Marion Madoff, Shana Madoff:

  i.   238 shares of AXA (approximately $5,131.28), held by Peter and/or Marion Madoff;

Exhibit A, Page iv of ix

| | | |
|---|---|---|
| | ii. | 1 share of Apache Corp. (approximately $25.23), held by Peter and/or Marion Madoff; |
| | iii. | 67 shares of Wells Fargo (approximately $1,744.01), held by Peter and/or Marion Madoff; |
| | iv. | 1,000 shares of Laguna Hills, held by Peter and/or Marion Madoff; |
| | v. | 8 shares of Forest Oil (approximately $56.64), held by Peter and/or Marion Madoff; |
| | vi. | 4 shares of Lone Pine (approximately $10.68), held by Peter and/or Marion Madoff; |
| | vii. | Various New York City municipal bonds maturing August 2026 (approximately $300,000), custodied at JPMorgan Chase; |
| | viii. | State of Israel bonds (approximately $250) held by Shana Madoff; |
| | ix. | Various Series E and EE United States savings bonds (approximately $1,576.83) held by Shana Madoff; |
| | x. | 200 shares of Marathon Oil (approximately $130) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. |
| | xi. | 528 shares of ExxonMobile (approximately $248.16) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. |
| | xii. | Shares of McCormick (approximately $9,445.27) held for the benefit of the Shana Diane Madoff Trust, Bernard L. Madoff and Paul Konigsberg, Trustees. |
| | xiii. | Shares of AT&T (approximately $28,327.56) held by Peter Madoff, Custodian, Shana Madoff UTMA; |
| | xiv. | Shares of Kodak held by Shana Diane Madoff; |
| k. | | All funds, financial instruments, securities, cash, and other property in the 529 College Savings Plans (approximately $64,634.69) for the benefit of ████████████, held by Peter and/or Marion Madoff. |

9.      The contents of any and all safe deposit boxes held in the name or for the  benefit of Peter B. Madoff, Marion Madoff, and/or Shana Madoff, including the safe deposit box held at TD Bank, 85th Street and Lexington Avenue, New York, New York, but not including the items set forth on Schedule I annexed hereto.

10.     The contents of the storage unit in Florida, held by Peter and/or Marion Madoff, containing the personal property formerly located at 200 Algoma Road, Palm Beach, Florida, but not including the items set forth on Schedule I annexed hereto.

11.     Any and all ownership interest held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff in the assets of any and all corporations, partnerships or other entities, and/or their subsidiaries, affiliates and joint ventures, including:

     i.       Madoff Family LLC;

     ii.      Madoff Technologies LLC;

     iii.     Madoff Energy Holdings LLC;

     iv.      Madoff Brokerage & Trading;

     v.       Madoff Securities International Limited;

     vi.      Essex Realty LLC;

     vii.     Primex Holdings;

     viii.    Cohmad Securities;

     ix.      Sterling III;

     x.       Sterling IV;

     xi.      Sterling V;

     xii.     Duhl & Mayer;

     xiii.    Summit Water Development Group.

12.     Any and all security, note, debt, investment or other financial instrument or investment vehicle held in the name, on behalf or for the benefit of Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff.

Exhibit A, Page vi of ix

13. Any and all interests in property held by, on behalf of, or legally or beneficially owned by Peter B. Madoff, Marion Madoff, and/or Shana Madoff.

14. Any and all loans, promissory notes, receivables, security or financing arrangement, gift, donation or other contribution whether or not in writing, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, by or from, directly or indirectly, Peter B. Madoff, Marion Madoff, Shana Madoff, and/or Roger Madoff, including but not limited to:

   i. A March 23, 2005 note from Peter and/or Marion Madoff to Roger and Jennifer Madoff, in the amount of $2,400,000;

   ii. A March 24, 2005 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,500,000;

   iii. A February 9, 2007 note from Peter and/or Marion Madoff to Shana Skoller (Madoff) as Trustee of the ███████████ Trust, in the amount of $100,000;

   iv. A February 27, 2007 note from Peter and/or Marion Madoff to Shana Madoff, in the amount of $2,000,000;

   v. A March 25, 2008 note from Peter Madoff to Harvey W. Nelson, in the amount of $60,000;

   vii. A June 16, 2008 note from Peter Madoff to Shana Madoff and Eric J. Swanson, in the amount of $3,000,000;

   vi. An October 15, 2008 note from Peter Madoff to Seymour Cohen, in the amount of $100,000;

15. Any and all Social Security payments made or to be made to Peter B. Madoff.

16. Any and all tax refunds paid to Peter B. Madoff and/or Marion Madoff attributable to assets and liabilities incurred through calendar year 2009.

17. Any and all income, including but not limited to investment income or dividends, paid to Peter B. Madoff and/or Marion Madoff, but not including (a) any funds or property that may be left to Marion Madoff in settlement of her claims under the forfeiture laws, or (b) any income earned by Marion Madoff as a result of employment after June 29, 2012.

18. Any and all transfers of funds or other property made by Peter B. Madoff and/or Marion Madoff during the period beginning in the approximately 1996 through

Exhibit A, Page vii of ix

and including June 28, 2012, whether or not considered to be a loan, financing arrangement, gift, donation or other contribution, unless the transferee is a bona fide purchaser for value of the right, title, or interest in the funds or other property and was at the time of the transfer reasonably without cause to believe that the property was subject to forfeiture, including but not limited to the following:

    a.    $12,000 transferred to or for the benefit of Howard Schwartzberg;

    b.    $127,295 transferred to or for the benefit of ███████;

    c.    $320,000 transferred to or for the benefit of Andrew Ross Samuels;

19.    Any and all artwork, oriental rugs, furniture, antiques, or other collectibles and/or valuables in the possession of Peter B. Madoff and/or Marion Madoff, but not including the items set forth on Schedule I annexed hereto.

Exhibit A, Page viii of ix

## <u>SCHEDULE I</u>

1.    Two bicycles owned by Jennifer Stevens Dickson and her husband, stored in the
      basement storage unit associated with 975 Park Avenue, Apartment 6B, New York, New
      York.